Carmine GARBELLOTTO, Plaintiff,

v.

MONTELINDO COMPAGNIE NAVEGA-
CION, S. A., Defendant and Third-
Party Plaintiff,

v.

PITTSTON STEVEDORING CORP. and
Smith & Kelly Company, Third-
Party Defendants.

No. 65 Civ. 3446.

United States District Court
S. D. New York.

Jan. 6, 1969.

Zimmerman & Zimmerman, New York City, for plaintiff.

Haight, Gardner, Poor & Havens, New York City, for defendant and third-party plaintiff.

Bigham, Englar, Jones & Houston, New York City, for third-party defendant, Pittston Stevedoring Corp.

Poles, Tublin, Patestides & Stratakis, New York City, for third-party defendant, Smith & Kelly Co.

## OPINION

FRANKEL, District Judge.

Plaintiff longshoreman brought this suit for injuries allegedly suffered on October 29, 1965, when he fell into a hatch aboard defendant's vessel, the S.S. Eva, which was being unloaded at a New York City pier. A few days before the accident, Smith & Kelly Company, a Georgia stevedoring concern, had discharged some of the ship's cargo at Savannah, Georgia, pursuant to telephoned instructions from the shipper. At the time of the accident, plaintiff's employer, Pittston Stevedoring Corp., was in charge of the unloading. Defendant shipowner has served third-party complaints upon both Smith & Kelly and Pittston. As to the latter, no problems other than the usual questions of fact have thus far arisen. As to Smith & Kelly, however, there is a threshold issue of jurisdiction, raised by this party's motion under Fed. R.Civ.P. 12 to dismiss the complaint.

It is undisputed that Smith & Kelly is not "present" or "doing business" in New York in any sense that could ground *in personam* jurisdiction. Granting this, the shipowner claims that Smith & Kelly is suable here under New York CPLR § 302(a) (3) (ii), which provides:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent: * * *

(3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he * * *

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce * * *."[1]

Pressing a contrary view on its motion, Smith & Kelly urges that (1) the quoted New York statute is inapplicable; and (2) if held applicable, the statute becomes unconstitutional.

1. As its first and main contention, the movant says that the quoted New York provision "was meant to deal with tort actions where the tortious act is committed outside the state and not to actions based solely on contracts made and performed outside the state."[2] The shipowner's third-party claim, this argument proceeds, rests upon the stevedore's "warranty of workmanlike service," and thus is an "action * * * for a breach of contract" which cannot, for jurisdictional or other purposes, be "changed * * * to one for a tort * * *."[3] There are several flaws in this analysis.

To begin with, § 302(a) (3) does not say that its coverage is confined to "tort actions * * *." Literally, it refers to any "cause of action arising" from "a tortious act without the state causing injury to person or property within the state * * *." The case at hand falls literally within those terms.

The situation for Smith & Kelly is not helped when we move from the strict letter to the sense and policy of the matter. There is nothing in the substantive interests with which the New York legislature was concerned in enacting § 302(a) (3) which could warrant making jurisdiction turn upon technical distinctions between "tort" and "contract." Indeed, these traditional categories are being rethought even on the substantive level as it becomes increasingly apparent that the fulfillment of contemporary needs is no longer achieved by reasoning from the supposed premises of the ancient writs. See, e. g., Goldberg v. Kollsman Instrument Corporation, 12 N.Y.2d 432, 436, 240 N.Y.S.2d 592, 594, 191 N.E.2d 81, 82 (1963).[4] If it is not *a fortiori*, it is surely no less clear that we should not inject such reasoning into the procedural area with which the legislature was concerned when it specified the kinds of *acts* (not "causes of action") outside the state which would give rise to jurisdiction over

---

1. No question is raised as to the propriety of asserting jurisdiction, and effecting service, in the federal court (where, as here, there is diversity) under the provisions of such a state "long-arm" statute. See Arrowsmith v. United Press International, 320 F.2d 219, 223, 6 A.L.R.3d 1072 (2d Cir. 1963) ; Fed.R.Civ.P. 4(f).

2. Brief in support of motion, p. 8.

3. The quoted words are from Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp., 350 U.S. 124, 134, 76 S.Ct. 232, 237, 100 L.Ed. 133 (1956), where, as all agree, the context was different.

4. "A breach of warranty, it is now clear, is not only a violation of the sales contract out of which the warranty arises but is a tortious wrong suable by a non-contracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer."

The movant's insistence that the third-party complaint must inescapably be characterized as contractual contrasts oddly with its emphasis elsewhere on the point that there was no contractual relationship of any kind between itself and the shipowner.

disputes about consequences within the state.

■ The precise question here considered does not appear to have been the subject of many reported decisions. The closely similar cases that have been found, however, including the very recent one of our Brother Cannella in Farina v. Compania Sud Americana De Vapores, 68 A.M.C. 829 (1968), support the conclusion that Smith & Kelly must be held under CPLR § 302(a) (3) (ii) to defend upon the merits the third-party complaint against it. Beetler v. Zotos, 388 F.2d 243 (7th Cir. 1968); Kroger Company v. Adkins Transfer Company, 284 F.Supp. 371, 375–76 (M.D.Tenn.1968); Keckler v. Brookwood Country Club, 248 F.Supp. 645, 646–647 (N.D.Ill.1965); 9B Uniform Laws Annotated 310, 312 (1966) (Commissioners' Note on Uniform Interstate and International Procedure Act § 1.03); Newman v. Charles S. Nathan, Inc., 55 Misc.2d 368, 285 N.Y. S.2d 688 (Sup.Ct.1967).

2. The New York jurisdictional statute, as so construed and applied to the facts of this case thus far disclosed, is not unconstitutional. New York has taken pains to provide that there must be not only an injury occurring within the state, but also an element of reasonable foreseeability for the non-resident actor called upon to defend in New York. No question as to the existence of this latter element is raised by Smith & Kelly. This stevedoring company may be supposed to have been cognizant of what is known to everyone in its trade. "The hazards are well known since work, especially at succeeding ports, calls for much traffic on and over hatches." D/S Ove Skou v. Hebert, 365 F.2d 341, 347 (5th Cir. 1966).

New York, sensitive to the retaliatory powers of other States and to the limitations imposed by familiar doctrine, has drawn the questioned statute so as to exclude "non-domiciliaries whose business operations are of a local character" centered in some other State. N.Y.Jud., Conf., Twelfth Annual Report 341 (1967); see also Weinstein, Korn and Miller, New York Civil Practice 3–45.17 and 3–45.20 (1967). The result, at least so far as now appears in this case, "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ Some other subjects are stirred in the papers. None seems to require much further discussion.[5] The motion to dismiss is denied. So ordered.

5. One, however, a purported appeal to the court's discretion, should be mentioned briefly. The movant argues that the third-party complaint, served almost three years after commencement of the action, should be dismissed as untimely. There are several answers to this. First, the movant—asking to be sued still later in a separate action—shows no prejudice to itself whereas the plaintiff, who might indeed have an objection on this score, makes none. Second, the shipowner has powerful ground for arguing that this point was waived by failure to raise it in an earlier version of the present Rule 12 motion. Third, the movant itself has been guilty of long and inexcusable delay in bringing the jurisdictional question on for decision.