06-2228-cv
Ehrenfeld v. Mahfouz

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------------------

August Term 2006

Argued:  November 8, 2006      Decided:  June 8, 2007

Docket No. 06-2228-cv

------------------------------------------------X

RACHEL EHRENFELD,

                    Plaintiff-Appellant,


                    - against -


KHALID SALIM BIN MAHFOUZ,


                    Defendant-Appellee.

------------------------------------------------X

     Before:   FEINBERG, LEVAL, and CABRANES, Circuit Judges.

     Plaintiff-Appellant Rachel Ehrenfeld appeals from a judgment of the United States District Court for the Southern District of New York (Richard C. Casey, J.) granting the motion to dismiss of Defendant-Appellee Khalid Salim Bin Mahfouz on the basis of the lack of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1) and N.Y. C.P.L.R. § 302(a)(3), denying Ehrenfeld's request for jurisdictional discovery, and dismissing the case for lack of personal jurisdiction.

-1-

Question regarding N.Y. C.P.L.R. § 302(a)(1) certified to the New York Court of Appeals.  Judgment affirmed as to N.Y. C.P.L.R. § 302(a)(3) and jurisdictional discovery.

DANIEL J. KORNSTEIN, MARK PLATT, CECELIA CHANG, MIKAELA A. MCDERMOTT, Kornstein Veisz Wexler & Pollard, LLP, New York, NY, for Plaintiff-Appellant.

STEPHEN J. BROGAN, TIMOTHY J. FINN, Jones Day, Washington, DC, and MICHAEL NUSSBAUM, Bonner, Kiernan, Trebach & Crociata, Washington, DC, for Defendant-Appellee.

Kurt A. Wimmer, Jason P. Criss, Covington & Burling LLP, New York, for Amici Curiae Amazon.com, American Society of Newspaper Editors, Association of American Publishers, Inc., Authors Guild, Inc., Electronic Frontier Foundation, European Publishers Council, Forbes Inc., John Fairfax Holdings, Ltd., Media/Professional Insurance, Media Institute, Newspaper Association of America, Online News Association, Radio-Television News Directors Association, Reporters Committee for Freedom of the Press, and World Press Freedom Committee, in support of Plaintiff-Appellant.

FEINBERG, Circuit Judge:

Plaintiff-Appellant Rachel Ehrenfeld appeals from a judgment of the United States District Court for the Southern District of New York (Richard C. Casey, J.) granting the motion to dismiss of Defendant-Appellee Khalid Salim Bin Mahfouz on the basis of the lack of personal jurisdiction under N.Y.

-2-

C.P.L.R. § 302(a)(1) and N.Y. C.P.L.R. § 302(a)(3), denying Ehrenfeld's request for jurisdictional discovery, and dismissing the case for lack of personal jurisdiction. For the reasons hereafter stated, we certify to the New York Court of Appeals a question inquiring whether § 302(a)(1) of New York's long-arm statute confers personal jurisdiction over a person (1) who sued a New York resident in a non-U.S. jurisdiction; and (2) whose contacts with New York stemmed from the foreign lawsuit and whose success in the foreign suit resulted in acts that must be performed by the subject of the suit in New York? We affirm the District Court's judgment as to N.Y. C.P.L.R. § 302(a)(3) and jurisdictional discovery.

I. BACKGROUND

Ehrenfeld is the author of Funding Evil: How Terrorism is Financed -- and How to Stop It, which was published by Bonus Books in 2003 in the United States. Mahfouz is a Saudi Arabian citizen who was formerly the president and chief executive officer of The National Commercial Bank of Saudia Arabia. In Funding Evil, Ehrenfeld alleges that Mahfouz, among others, financially supported terrorism. Mahfouz sued Ehrenfeld in England for libel on the basis of these allegations. Ehrenfeld alleges that Mahfouz chose that venue because of its more favorable libel laws. Ehrenfeld did not appear in the English

-3-

case and the English court issued a default judgment against her stating, in most relevant part, that Ehrenfeld must refrain from "publishing, or causing or authori[z]ing the further publication" of the disputed statements about Mahfouz in Funding Evil within the English court's jurisdiction.

Basing federal jurisdiction on diversity, 28 U.S.C. § 1332, Ehrenfeld seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that (1) Mahfouz could not prevail on a libel claim against Ehrenfeld under the laws of New York and the United States; and (2) the judgment in the English case is not enforceable in the United States on constitutional and public policy grounds.

Mahfouz moved to dismiss Ehrenfeld's suit for lack of subject-matter jurisdiction and personal jurisdiction under, respectively, Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure. The district court dismissed the case for lack of personal jurisdiction and declined to address whether subject matter jurisdiction existed.

## II. DISCUSSION

### A. Preliminary Issues

Before discussing the issue of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3), we address two preliminary matters.

-4-

## 1. Ripeness

We first address Mahfouz's argument that subject matter jurisdiction is lacking because the case is not "ripe." "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hospitality Ass'n v. DOI, 538 U.S. 803, 808 (2003) (internal quotation marks omitted); see also Simmonds v. I.N.S., 326 F.3d 351, 356-7 (2d Cir. 2003) ("'Ripeness' is a term that has been used to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction.").[1]

Article III ripeness "prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." Simmonds, 326 F.3d at 357. This case presents a "concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III," id., and is therefore ripe within the constitutional sense.

---

[1] Neither party has distinguished between constitutional and prudential ripeness, but it appears that their arguments primarily go to the court's prudential power to dismiss the case.

A case held not to be prudentially ripe reflects a court's judgment that the case would "be better decided later" and that the parties' "constitutional rights [would not be] undermined by the delay." Id. (emphasis omitted). Two factors inform our analysis of prudential ripeness: 1) "the fitness of the issues for judicial decision"; and 2) "the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967).

In Yahoo! v. La Ligue Contre Le Racisme, 433 F.3d 1199 (9th Cir. 2006) (en banc), a case involving facts similar to those here, a group of three judges of the 11-judge en banc court stated that the case should be dismissed for lack of prudential ripeness.[2] These judges reasoned, in part, that the question was not yet fit for judicial decision because the foreign orders were interim orders that could be modified before any attempt to enforce the orders in the United States. Id. at 1215. It was therefore unclear whether enforcement of the foreign court's final order would be repugnant to California's public policy.

_____

[2] When these three judges were combined in Yahoo! with three other judges who voted to dismiss the case for lack of personal jurisdiction, there was a majority of six votes of the en banc court to dismiss the case. See Yahoo!, 433 F.3d at 1201.

-6-

Moreover, Yahoo! had voluntarily changed its policy to comply at least partially with the interim order, so it was unclear whether the foreign court would hold that Yahoo! was, as a result, in compliance with the foreign court's orders. Id. at 1215, 1223. The same three judges stated:

> The possible -- but at this point highly speculative -- impact of further compliance with the [foreign] court's orders on access by American users would be highly relevant to the question whether enforcement of the orders would be repugnant to California public policy. But we cannot get to that question without knowing whether the [foreign] court would find that Yahoo! has already complied "in large measure," for only on a finding of current noncompliance would the issue of further compliance, and possible impact on American users, arise.

Id. at 1217. Thus, these three judges concluded that they were "uncertain about whether, or in what form, a First Amendment question might be presented to [them]," id. at 1217, that the suit came "perilously close to a request for a forbidden advisory opinion," id. at 1223, and that "[i]n its current form, this case presents the sort of '[p]roblems of prematurity and abstractness' that counsel against reaching the First Amendment question that Yahoo! insists is presented by this

case," id. at 1211 (quoting Socialist Labor Party v. Gilligan, 406 U.S. 583, 588 (1972)).

In contrast, in the case before us the English judgment is a final order requiring Ehrenfeld to refrain from "publishing, or causing or authori[z]ing the further publication" of the disputed statements about Mahfouz in Funding Evil within the English court's jurisdiction.  There has been no suggestion that the order will be changed or that Ehrenfeld has instituted a policy under which she will be in compliance with the order.  In other words, this case presents a clear and concrete issue for resolution by a court and does not present any of the problems of prematurity that characterized the Yahoo! case.  We therefore decline to dismiss the case for lack of prudential ripeness.

2. Constitutional Due Process

The second preliminary matter concerns whether personal jurisdiction in this case satisfies constitutional due process. We note that even if the New York Court of Appeals concludes that personal jurisdiction is proper under § 302(a)(1) of the New York long-arm statute, this Court must make the ultimate determination whether this jurisdiction satisfies constitutional due process.  See Metropolitan Life Ins. Co. v.

-8-

Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) ("[I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process."). We decline to address this issue now because "the state statute is susceptible of an interpretation that would eliminate the constitutional issue and terminate the litigation." Allstate Ins. Co. v. Serio, 261 F.3d 143, 151 (2d Cir. 2001) (internal quotation marks omitted); see also id. at 151-2 (thoroughly discussing the importance of the policy, also emphasized by the Supreme Court, that federal courts avoid constitutional issues whenever possible); but see Petroleum Helicopters, Inc. v. Avco Corp., 804 F.2d 1367, 1369 (5th Cir. 1986) (deciding constitutional due process issue prior to certifying a question similar to the one presented in this case).

B.   Standard of Review

This court reviews questions of statutory interpretation de novo. United States v. Pettus, 303 F.3d 480, 483 (2d Cir. 2002). But "it is well-established that the controlling

interpretation of state laws should normally be given by state rather than federal courts."  Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan, 263 F.3d 196, 203 (2d Cir. 2001).

C.    Personal Jurisdiction Under New York's Long-Arm Statute

1.  N.Y. C.P.L.R. § 302(a)(1)

a.  Certification Generally

Certification is appropriate "[w]henever it appears . . . that determinative questions of New York law are involved in a case pending before [it] for which no controlling precedent of the [New York] Court of Appeals exists."  N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a) (2006)[3].  However, questions are not to be routinely certified "simply because a certification procedure is available."  Kidney by Kidney v. Kolmar Labs., Inc., 808 F.2d 955, 957 (2d Cir. 1987).  Factors justifying certification include "the absence of authoritative state court

_____

[3]  This statute reads, in relevant part:
Section 500.27 Discretionary proceedings to review certified questions from Federal courts and other courts of last resort.
(a) Whenever it appears to the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals.

-10-

interpretations of the state statute, the importance of the issue to the state and the likelihood that the question will recur, and the capacity of certification to resolve the litigation."  Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000); see also Krohn v. New York City Police Dep't, 341 F.3d 177, 180 (2d Cir. 2003).  The Court may also consider whether the question implicates issues of state public policy.  See Krohn, 341 F.3d at 180.

b.  New York State Law

This case presents a question regarding the scope of New York C.P.L.R. § 302(a)(1) -- a provision of New York's long-arm statute -- that we have not previously addressed and about which New York State court decisions do not yield a clear answer.  Section 302(a)(1) confers jurisdiction over a non-domiciliary who "in person or through an agent ... transacts any business within the state" if the cause of action arises out of the defendant's New York transactions.  A non-domiciliary "transacts business" in New York "by purposefully avail[ing] [him or herself] of the privilege of conducting activities within the ... State, thus invoking the benefits and protections of its laws."  McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382 (1967) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (internal quotation marks omitted);

-11-

see also CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

Courts interpreting N.Y. C.P.L.R. § 302(a)(1) have held that non-commercial activity may qualify as the "transaction of business." See Padilla v. Rumsfeld, 352 F.3d 695, 709 & n.19 (2d Cir. 2003), rev'd on other grounds, 542 U.S. 426 (2004). In addition, a single transaction in New York may suffice to invoke personal jurisdiction "even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997) (alteration in original) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988) (internal quotation marks omitted)).

On the other hand, a single "cease and desist" letter sent to a New York resident in an attempt to settle legal claims will not be sufficient to invoke personal jurisdiction. See id. A cease-and-desist letter and subsequent communications used to secure further New York investments (and not merely to settle legal claims), by contrast, was held to be sufficient to find personal jurisdiction under the "transacts business" standard. See id.

Ehrenfeld alleges that Mahfouz's contacts with New York were: 1) the service on Ehrenfeld of a letter stating Mahfouz's claims in English court (essentially a cease and desist letter); 2) receipt by Ehrenfeld on at least six occasions of letters and e-mails relating to the English case; 3) personal service on Ehrenfeld by Mahfouz's representatives on four occasions of papers pertaining to the English case; and 4) receipt by Ehrenfeld by e-mail and letter of the English Court's order.  Ehrenfeld argues that Mahfouz had an additional contact with New York: she says that he implemented a scheme (which consisted of securing the English judgment and related actions), all designed to chill her research and writing in New York.  Mahfouz also operates a website that can be accessed in New York.  New York courts have not addressed whether personal jurisdiction should attach when the contacts with New York are of this nature.

c.  The Appropriateness of Certification

As discussed above, this case turns on an "unsettled" question of state law for which there is "no direct precedent." See Alexander & Alexander Serve., Inc. v. Lloyd's Syndicate 317, 902 F.2d 165, 169 (2d Cir. 1990); see also Westchester v. Comm'r of Transp. of Conn., 986 F.2d 624, 627 (2d Cir. 1993)

-13-

(certifying "questions of first impression under Connecticut law" for which "[t]here appear to be no controlling precedents in Connecticut"); Israel v. State Farm Mut. Auto. Ins. Co., 239 F.3d 127, 136 (2d Cir. 2000) (certifying a case in which the Court found "no Conecticut precedent directly addressing the questions presented").

Mahfouz argues that certification is nevertheless improper because the case involves only a question of the application of settled law to new facts; so, he says, no unsettled question of state law is at stake.[4]  However, in <u>Alexander & Alexander</u>, we stated that a question of first impression under the long-arm statute "should be decided by the New York court because it directly involves the application of an important public policy of the State of New York, since that state has a strong interest in deciding the jurisdictional reach of its courts." 902 F.2d at 168-69.  This statement, which Mahfouz does not address, undermines his contention that a case involving the application of the long-arm statute, which he deems settled state law, to new facts may not be certified.  As in <u>Alexander & Alexander</u>, we certify "rather than having the only precedent on point be that of a federal court, which may be mistaken." Id. at 169.

---

[4] Ehrenfeld argues that if we are unsure whether New York's long-arm statute applies to Mahfouz's alleged conduct, we should certify to the New York Court of Appeals.

-14-

Furthermore, the question certified is significant, implicates important public policy for the State of New York, and is likely to be repeated. See Local Rule of the Second Circuit § 0.27[5]. The question is important to authors, publishers and those, like Mahfouz, who are the subject of books and articles. Thus, the question is "significant," within the meaning of Local Rule § 0.27. The issue may implicate the First Amendment rights of many New Yorkers, and thus concerns important public policy of the State. Because the case may lead to personal jurisdiction over many defendants who successfully pursue a suit abroad against a New York citizen, the question before us is also likely to be repeated. Cf. Alexander & Alexander, 902 F.2d at 169. ("[I]t is arguable ... that the New York courts will become a forum for suits

---

[5] The Rule reads, in full:
Certification of Questions of State Law

Where authorized by state law, this Court may certify to the highest court of a state an unsettled and significant question of state law that will control the outcome of a case pending before this Court. Such certification may be made by this Court sua sponte or on motion of a party filed with the clerk of this Court. Certification will be in accordance with the procedures provided by the state's legislature or highest state court rules, e.g., Conn. Public Act No. 85-111; New York Court of Appeals Rule 500.7. Certification may stay the proceedings in this Court pending the state court's decision whether to accept the certification and its decision of the certified question.

against any unauthorized alien or foreign insurer who benefits from the existence of a trust fund in a bank located in New York....").

For the reasons detailed above, we believe that the New York Court of Appeals can best resolve the issue of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1) that we are certifying.[6]

---

[6] Ehrenfeld also argues that the District Court improperly denied her jurisdictional discovery that might have revealed facts sufficient to sustain personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1). A District Court's denial of jurisdictional discovery is reviewed for abuse of discretion. See Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93 (2d Cir. 1975). Ehrenfeld contends that the District Court committed an error of law by requiring her to make a prima facie showing of jurisdiction before allowing discovery. Citing to Jazini v. Nissan Motor Corp., 148 F.3d 181 (2d Cir. 1998), the District Court stated that the "Second Circuit has disallowed jurisdictional discovery where a plaintiff has failed to establish a prima facie case and where there is a foreign defendant because such logic would require all foreign defendants to submit to discovery on this issue. Ehrenfeld's request for additional jurisdictional discovery is therefore denied." The District Court's use of the term "disallowed" is arguably a mischaracterization of Jazini, which held that a district court did not err when it denied jurisdictional discovery to a plaintiff suing a foreign corporation. See id. at 186. If the District Court understood Jazini as forbidding jurisdictional discovery any time a plaintiff does not make a prima facie showing of jurisdiction, this would indeed be legal error. See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (requiring only "legally sufficient allegations of jurisdiction" to survive a pre-discovery motion to dismiss). However, we think the District Court's comment on Jazini should be read as a justification of its exercise of discretion to deny jurisdictional discovery, not as a clear limit on its authority to exercise its discretion. Elsewhere, for example, the District Court stated that it "finds that there exists no need for additional jurisdictional discovery" -- a comment that does not imply any bright-line cabining of its discretion.

2.  N.Y. C.P.L.R. § 302(a)(3)

Alternatively, plaintiff argues that N.Y. C.P.L.R. § 302(a)(3) provides an independent basis for personal jurisdiction under New York's long-arm statute.  Plaintiff contends that she does not have to describe the elements of a tort in order to state a cause of action arising under a "tortious act" as required by N.Y. C.P.L.R. § 302(a)(3). Rather, she argues, defendant's wrongful "scheme" to chill her First Amendment rights satisfies the statute.  She relies principally on the case of Garbellotto v. Montelindo Compagnie Navegacion, 294 F.Supp. 487 (S.D.N.Y. 1969), which held that personal jurisdiction existed under § 302(a)(3) where there was a cause of action for breach of warranty, see id. at 488-89. Yet even in that case, the Court noted that "[a] breach of warranty ... is not only a violation of the sales contract ... but is a tortious wrong...."  Id. at 488 n.4.  Plaintiff's argument, then, is that as long as a plaintiff describes an act as somehow wrongful and not exclusively for breach of contract, it can be considered "tortious."  There is, however, no limiting principle to this argument. Any time a plaintiff considered himself wronged for whatever reason, even if no legally cognizable right of action existed, personal jurisdiction would exist over the defendant in a declaratory judgment suit.  We do not believe certification is appropriate

-17-

here, because we have seen no New York case law that ascribes such a broad meaning to "tortious act." See, e.g., Sung Hwan Co. v. Rite Aid Corp., 7 N.Y.3d 78, 84-85 (2006) (holding that an act considered tortious under Korean law was covered by § 302(a)(3), even though it provided for a remedy not available under New York law). We recognize the possibility that the claim brought in New York need not be a tort under New York law to justify invocation of § 302(a)(3) to confer jurisdiction. Id. Nonetheless, there must be some basis for considering the defendant's actions to be tortious, either under the law of New York or some other pertinent jurisdiction. In this case, plaintiff has shown no basis for considering defendant's actions to be tortious. Therefore, the District Court properly found that it could not exercise personal jurisdiction over defendant under § 302(a)(3).

III. Conclusion

For the reasons stated above, we affirm the District Court's opinion as to N.Y. C.P.L.R. § 302(a)(3) and jurisdictional discovery.

Because of the absence of authoritative state court precedent regarding the jurisdictional question raised under

-18-

N.Y. C.P.L.R. § 302(a)(1), the fact that the answer may resolve this litigation, and, most of all, the importance of the question, its policy implications for the State and the likelihood that the question will recur, we hereby respectfully certify the following question to the New York Court of Appeals: Does § 302(a)(1) of New York's long-arm statute confer personal jurisdiction over the defendant?

The certified question may be deemed expanded to cover any further pertinent question of New York law involved in this appeal that the Court of Appeals chooses to answer. This panel retains jurisdiction and will consider any issues that may remain on appeal once the New York Court of Appeals has either provided us with its guidance, or declined certification.

It is therefore ordered that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs, appendices, and record filed by the parties with this court. The parties are further ordered to bear equally such fees and costs, if any, as may be required by the New York Court of Appeals.

Certificate

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to 2d Cir. R. § 0.27 and N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27, as ordered by the United States Court of Appeals for the Second Circuit.