12-4890-cv
Kreisberg ex rel. National Labor Relations Board v. HealthBridge Management, LLC et al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: May 15, 2013          Decided: October 15, 2013)

Docket No. 12-4890-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JONATHAN B. KREISBERG, Regional Director of
Region 34 of the National Labor Relations Board, for
and on behalf of the NATIONAL LABOR RELATIONS BOARD,

Petitioner-Appellee,

-v.-

HEALTHBRIDGE MANAGEMENT, LLC, d/b/a
DANBURY HCC, 710 LONG RIDGE ROAD
OPERATING COMPANY II, LLC, d/b/a LONG
RIDGE OF STAMFORD, 240 CHURCH STREET
OPERATING COMPANY II, LLC, d/b/a
NEWINGTON HEALTH CARE CENTER, 1
BURR ROAD OPERATING COMPANY II, LLC,
d/b/a WESTPORT HEALTH CARE CENTER, 245
ORANGE AVENUE OPERATING COMPANY II,
LLC, d/b/a WEST RIVER HEALTH CARE
CENTER, 341 JORDAN LANE OPERATING
COMPANY II, LLC, d/b/a WETHERSFIELD
HEALTH CARE CENTER,

Respondents-Appellants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Before: CHIN and LOHIER, <u>Circuit Judges</u>, and KEENAN, <u>District Judge</u>.[*]

This is an appeal from an order of the United States District Court for the District of Connecticut (Chatigny, <u>J.</u>), granting a petition by the National Labor Relations Board, pursuant to 29 U.S.C. § 160(j), to enjoin temporarily alleged unfair labor practices by the appellants, a group of long-term elder care facilities and their management company. Appellants argue that the District Court lacked subject matter jurisdiction because the Board did not have a quorum and did not properly authorize its General Counsel to seek such temporary injunctive relief. They also argue that the District Court applied the wrong legal standard in assessing the petition and abused its discretion in granting it. Because we conclude that the petition was validly authorized and properly granted, we AFFIRM.

> ROSEMARY ALITO (George Peter Barbatsuly, *on the brief*), K&L Gates LLP, Newark, NJ, *and* ERIN E. MURPHY (Paul D. Clement, *on the brief*), Bancroft PLLC, Washington, DC, *for* Respondents-Appellants.
>
> BETH S. BRINKMANN, Deputy Assistant Attorney General (Stuart F. Delery, Acting Assistant Attorney General, Douglas N. Letter, Scott R. McIntosh, Joshua P. Waldman, Mark R. Freeman, Sarang V. Damle, Melissa N. Patterson, Benjamin M. Schultz, Attorneys, Appellate Staff, *on the brief*), United States Department of Justice, Civil Division, Washington, DC, *and* LAURA

---

[*] The Honorable John F. Keenan, of the United States District Court for the Southern District of New York, sitting by designation.

T. VAZQUEZ, Deputy Assistant General Counsel (Lafe E. Soloman, Acting General Counsel, Celeste J. Mattina, Deputy General Counsel, Barry J. Kearney, Assistant General Counsel, Jayme L. Sophir, Deputy Associate General Counsel, Elinor L. Merberg, Assistant General Counsel, Aaron J. Hilligas, Attorney, *on the brief*), National Labor Relations Board, Washington DC, *for* Petitioner-Appellee.

John M. Creane, Milford, CT, *and* Betty Grdina, Mooney, Green, Saindon, Murphy & Welch, Washington, DC, *for* Amicus Curiae New England Health Care Employees Union, District 1199, SEIU.

LOHIER, <u>Circuit Judge</u>:

This appeal requires us to consider the power of the General Counsel of the National Labor Relations Board (the "Board" or the "NLRB") to authorize petitions for temporary injunctive relief under Section 10 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(j), and the propriety of the District Court's decision to grant an injunction in this case.

HealthBridge Management ("HealthBridge") and the six Connecticut-based nursing facilities that it manages (the "Centers," and collectively, "HealthBridge") appeal from an order of the United States District Court for the

District of Connecticut (Chatigny, J.) granting a petition brought by the NLRB pursuant to Section 10(j) of the NLRA. The § 10(j) petition sought to enjoin temporarily, pending a final adjudication by the Board, alleged unfair labor practices related to a long-running labor dispute between HealthBridge and District 1199, SEIU (the "Union"), which represents the Centers' approximately 700 employees. HealthBridge argues that the Board lacked a quorum at the time that it purported to authorize the § 10(j) petition at issue, that the Board's prior contingent delegation to its General Counsel of the power to authorize such petitions did not survive the loss of a quorum, and that the District Court therefore lacked subject matter jurisdiction because the petition was not validly authorized. HealthBridge also argues that the Supreme Court's decision in Winter v. Natural Resources Defense Counsel, 555 U.S. 7 (2008), overruled this Circuit's established legal standard for evaluating § 10(j) petitions, which the District Court applied, and that the District Court abused its discretion in granting the petition.

We conclude that the Board may contingently delegate the power to authorize § 10(j) petitions to the NLRB General Counsel. Such delegations, made in 2001 and 2002, were in effect here, and the petition at issue was properly

-4-

authorized by the General Counsel pursuant to those delegations. <u>Winter</u>, which involved preliminary injunctions generally and not the specific right to injunctive relief created by the NLRA, does not impact the standard for § 10(j) petitions, and the District Court did not otherwise abuse its discretion in granting the petition in this case. Accordingly, we affirm.

BACKGROUND

We presume the parties' familiarity with the relevant facts in this case, which were described in detail by the District Court. <u>Kreisberg v. HealthBridge Mgmt., LLC</u>, No. 12-CV-1299, 2012 WL 6553103 (D. Conn. Dec. 14, 2012). We provide only a summary here.

A. <u>The Labor Dispute</u>

HealthBridge began managing the Centers in 2003, assuming prior management's employment agreements with the Union. In 2004 the parties entered into a collective bargaining agreement (the "CBA") that was set to last through March 2011.

The disputes relevant to this litigation began in 2010, when HealthBridge unilaterally instituted a number of changes to the terms and conditions of some

Union members' employment. These changes included altering certain employees' hours, overtime pay, vacation policies, and benefits, subcontracting out certain employees' work and then rehiring them at reduced wages and benefits, and conducting layoffs without notice.

In January 2011, as their dispute continued, HealthBridge and the Union began to negotiate a new CBA. The parties characterize the year-and-a-half-long negotiations quite differently, but there is no dispute that they went poorly. At first, the Union asked HealthBridge to rescind the unilateral changes it had implemented in 2010. HealthBridge refused and "sought to codify the unilateral changes underlying" the then-pending NLRB complaint in the new CBA. HealthBridge also proposed replacing the employees' pension plan with a 401(k) plan, a proposal that emerged as a major sticking point in the negotiations.

The Union filed charges with the Board alleging various violations of the NLRA, and the Board issued a complaint in March 2011.

Notwithstanding the complaint, in December 2011, after the Union refused a purported "Final Offer" that included many of HealthBridge's initial proposals, including the 401(k) plan, HealthBridge locked out Union employees from one of the Centers. One week after the lockout began, the Union proposed submitting

all issues to arbitration. HealthBridge countered with a proposal for a three percent wage increase, replacement of the pension with a 401(k) plan, and arbitration of all other issues. The Union refused. Further counterproposals followed, but the parties made little progress. The employee lockout ended only in April 2012, after the Board issued a second complaint against HealthBridge (the "Lockout Complaint") alleging that the lockout violated the NLRA.

Thereafter, the parties made "Last, Best, and Final proposals" ("LBFs"). Both parties offered concessions in the LBFs, but the pension issue remained unresolved. HealthBridge insisted it could not sign a CBA that did not phase out the pension, while the Union stated that it was "not willing to talk about the pension in a vacuum," indicating that it could move on the pension issue only in exchange for other substantial concessions. While HealthBridge stated it would "consider modifications" to its LBF in exchange for agreement on the pension issue, it never made a concrete offer. Meanwhile, the Union proposed to offer four percent savings from HealthBridge's gross payroll and to adopt a two-tiered system in which new employees would enroll in a 401(k) plan rather than a pension. These offers were rejected. In May 2012 HealthBridge asserted that if the Union did not make any further proposals, the parties "will have reached an

impasse in their negotiations."[1] The Union rejected this assertion, pointing to its various counterproposals. At the next bargaining session, the Union's representative was asked whether the Union had moved on the pension issue. The Union representative replied, "[W]e told you before depending on the overall proposal we would consider anything."

In June 2012 HealthBridge declared an impasse and unilaterally imposed its LBFs, which included substantial modifications to employees' benefits, benefits eligibility, overtime, and sick leave, as well as a change from the pension to the 401(k) plan. This prompted the Union to notify HealthBridge of its intent to strike and the Board to amend the Lockout Complaint, adding allegations that HealthBridge had engaged in new unfair labor practices by unilaterally imposing its LBFs in the absence of a good faith impasse. After further failed negotiations to avert the strike, the Union declared an unfair labor practices strike[2] on July 3,

---

[1] The legal import of reaching a lawful impasse is that the parties' "bargaining obligation [under federal labor law] is suspended temporarily." Erie Brush & Mfg. Corp. v. NLRB, 700 F.3d 17, 20 (D.C. Cir. 2012).

[2] Where there is a strike for actual unfair labor practices, "the striking employees do not lose their status and are entitled to reinstatement with back pay, even if replacements for them have been made." Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 278 (1956); cf. SDBC Holdings, Inc. v. NLRB, 711 F.3d 281, 295 (2d Cir. 2013) (explaining that this protection does not apply where employer did not commit an unfair labor practice).

2012. According to HealthBridge, striking employees committed acts of vandalism and sabotage against the Centers, but no proof of any sabotage exists in the record beyond the fact of the allegations. Meanwhile, the Union offered to end the strike and resume negotiations while working under conditions as they existed before HealthBridge imposed its LBFs, but that offer was rejected. By August 2012 HealthBridge had replaced all of the striking employees.

The NLRB complaint that had been filed in March 2011 ultimately was resolved in the Union's favor in August 2012, when an Administrative Law Judge held that HealthBridge had committed the alleged labor law violations. See HealthBridge Mgmt., LLC, No. 34-CA-12715, 2012 WL 3144346 (NLRB N.Y. Div. of Judges Aug. 1, 2012).

On August 16, 2012, the Board authorized its Regional Director, Jonathan B. Kreisberg, to bring an action on behalf of the Board pursuant to § 10(j) to enjoin HealthBridge from imposing its LBFs. The Board believed that such an injunction was necessary to preserve its ability to enforce any NLRA violations. Separately, the Board's Acting General Counsel authorized the filing of the § 10(j) petition in District Court on September 7, 2012. Without objection, the District Court then tried the matter on the papers. Thereafter, HealthBridge moved to

dismiss for lack of subject matter jurisdiction, arguing that the § 10(j) petition was not validly authorized as required by the NLRA because the Board lacked a quorum when it purported to authorize the petition and the General Counsel lacked the power independently to authorize it.

B. The Board and the General Counsel

The Board typically has five members, and a quorum of the Board is three members. See 29 U.S.C. § 153(a), (b). Here, whether the Board had a quorum when the petition was filed depends on the constitutional validity of several recess appointments made by the President of the United States. On January 3, 2012, the term of NLRB Commissioner Craig Becker, himself a March 2010 recess appointee, expired, and without Becker, the Board had only two members. On January 4, 2012, President Obama made three recess appointments to the Board: Sharon Block, Richard Griffin, and Terence F. Flynn.[3] At the time that the President made the January 4, 2012 recess appointments, the United States Senate was holding periodic "pro forma sessions." See 157 Cong. Rec. S8783-84 (Dec. 17,

---

[3] Flynn resigned in May 2012. See NLRB, "National Labor Relations Board Member Terence Flynn Resigns," (May 27, 2012), available at http://www.nlrb.gov/news-outreach/news-releases/national-labor-relations -board-member-terence-flynn-resigns (last visited Sept. 11, 2013).

2011). And so by the time the § 10(j) petition was authorized in August 2012, two of the Board's four members were serving based on the January 4, 2012 recess appointments.

The General Counsel is a Presidentially appointed and Senate-confirmed executive officer who has "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of [Title 29 of the United States Code], and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law." 29 U.S.C. § 153(d). Whether the General Counsel could authorize the § 10(j) petition depends on the effectiveness of the Board's delegation. The Board has, at various times, contingently delegated its power to authorize § 10(j) petitions to the General Counsel in the event that it loses a quorum. See, e.g., Order Contingently Delegating Authority to the General Counsel (the "2011 Delegation"), 76 Fed. Reg. 69,768, 69,768-69 (NLRB Nov. 9, 2011); Order Delegating Authority to the General Counsel (the "2001 Delegation"), 66 Fed. Reg. 65,998, 65,998 (NLRB Dec. 21, 2001).[4]

_____

[4] Similar delegations stretch back to the 1940s. See Statement of Delegation of Certain Powers of National Labor Relations Board to General Counsel of National Labor Relations Board, 13 Fed. Reg. 654, 654-55 (NLRB Feb. 13, 1948).

### C. Procedural History

In December 2012 the District Court denied HealthBridge's motion to dismiss and granted the Board's petition for injunctive relief. With respect to the jurisdictional issue, the District Court held that the Board had validly delegated to the General Counsel its power to authorize § 10(j) petitions. Applying the two-prong test for § 10(j) injunctions previously articulated by this Court, the District Court determined that "reasonable cause" existed for the injunction, because (1) the Union had remained open to further compromise when HealthBridge implemented its LBFs, and so there had been no impasse as a matter of fact, and (2) there had been no impasse as a matter of law because of the unremedied unfair labor practices occurring throughout the relevant period. The District Court also rejected HealthBridge's argument that an injunction was not "just and proper" due to the strikers' alleged sabotage or the financial peril faced by the Centers.

This appeal followed.

## DISCUSSION

### A. Authorization of the § 10(j) Petition

We first address the question of whether the Board validly delegated its duty to authorize the § 10(j) petition. We review de novo the District Court's jurisdictional determination as well as its interpretation of the Constitution and federal statutes and regulations. See Ehrenfeld v. Mahfouz, 489 F.3d 542, 547 (2d Cir. 2007); United States v. King, 276 F.3d 109, 111 (2d Cir. 2002); McCarthy v. Navistar Fin. Corp., 59 F.3d 9, 11 (2d Cir. 1995).

The NLRA vests the Board with the "power . . . to petition any United States district court, within any district wherein [a complained-of] unfair labor practice . . . is alleged to have occurred . . . for appropriate temporary relief," and confers upon district courts the power "to grant to the Board such temporary relief or restraining order" only "[u]pon the filing of any such petition." 29 U.S.C. § 160(j). HealthBridge argues that we must consider and resolve the validity of the President's January 4, 2012 recess appointments under the Recess Appointments Clause, U.S. Const. Art. II, Sec. 2, cl. 3. Although other circuits have reached this question, it is unnecessary to do so in this appeal. See NLRB v. Enter. Leasing Co. S.E., LLC, 722 F.3d 609, 660 (4th Cir. 2013) (finding the "pro

-13-

forma" recess appointments invalid); NLRB v. New Vista Nursing & Rehab., 719 F.3d 203 (3d Cir. 2013) (same); Noel Canning v. NLRB, 705 F.3d 490 (D.C. Cir. 2013) (same), cert. granted, 133 S. Ct. 2861 (June 24, 2013) (mem.). When, as here, a case may be resolved on other grounds, courts may decline to reach a constitutional question to "avoid deciding constitutional issues needlessly." Christopher v. Harbury, 536 U.S. 403, 417 (2002). Accordingly, we consider only whether the District Court erred when it concluded that the General Counsel properly authorized the petition pursuant to the Board's delegation of its § 10(j) authority.

Three delegations by the Board of its § 10(j) power are relevant to resolve this issue: the 2001 Delegation, the 2002 Order Delegating Authority to the General Counsel ("2002 Delegation"), 67 Fed. Reg. 70,628 (NLRB Nov. 19, 2002), and the 2011 Delegation. The 2001 Delegation promulgated on December 14, 2001 provides, in relevant part:

> To assure that the [NLRB] will be able to meet its obligations to the public, the Board has decided to temporarily delegate to the General Counsel full authority on all court litigation matters that would otherwise require Board authorization. This delegation shall be effective during any time at which the Board has fewer than three Members and is made under the authority granted to the Board under sections 3, 4, 6, and 10 of the National Labor Relations Act.

> Accordingly, the Board delegates to the General Counsel full and final authority and responsibility on behalf of the Board to initiate and prosecute injunction proceedings under section 10(j) or section 10(e) and (f) of the Act . . . . This delegation shall be revoked whenever the Board has at least three Members.

2001 Delegation, 66 Fed. Reg. at 65,998.

In the 2002 Delegation, the Board confirmed that "[a]ll existing delegations of authority to the General Counsel and to staff in effect prior to the date of this order remain in full force and effect, including the December 14, 2001, delegation regarding court litigation authority . . . ." 67 Fed. Reg. at 70,628. In particular, the 2002 Delegation delegated additional authority to the General Counsel – authority not granted in the 2001 Delegation – to certify to the Attorney General the results of any secret ballot elections held among employees on the question of whether they wish to accept the final offer of settlement made by their employer pursuant to § 209(b). Id.

Finally, the 2011 Delegation provides, in relevant part:

> To assure that the [NLRB] will be able to meet its obligations to the public to the greatest extent possible, the Board has decided to temporarily delegate to the General Counsel full

authority on all court litigation matters that would otherwise require Board authorization . . . .  This delegation shall be effective during any time at which the Board has fewer than three Members and is made under the authority granted to the Board under sections 3, 4, 6, and 10 of the National Labor Relations Act.

Accordingly, the Board delegates to the General Counsel full and final authority and responsibility on behalf of the Board to initiate and prosecute injunction proceedings under section 10(j) or section 10(e) and (f) of the Act, . . . .  These delegations shall become and remain effective during any time at which the Board has fewer than three Members, unless and until revoked by the Board. . . .

All existing delegations of authority to the General Counsel and to staff in effect prior to the date of this order remain in full force and effect.

2011 Delegation, 76 Fed. Reg. at 69,768-69. The 2011 Delegation explicitly states that "[o]n December 14, 2001, and on November 19, 2002, the Board previously delegated to the General Counsel, on the same basis, full authority on all court litigation matters that would otherwise require Board authorization . . . . This Order consolidates, restates and affirms those prior delegations." Id. at 69,769 n.2.[5]

Pointing to Member Becker's allegedly invalid March 2010 recess appointment, HealthBridge challenges the validity of the 2011 Delegation, arguing that the Board lacked a quorum when it issued the order establishing that delegation.[6] But HealthBridge does not challenge the validity of the 2001 or 2002 Delegations,[7] which contain no expiration date and remain effective.

_____

[5] All three of these delegations anticipated that the Board might lose a quorum in the near future. See 2011 Delegation, 76 Fed. Reg. at 69,768 ("The National Labor Relations Board anticipates that in the near future it may, for a temporary period, have fewer than three Members of its full complement of five Members."); 2002 Delegation, 67 Fed. Reg. at 70,628; 2001 Delegation, 66 Fed. Reg. at 65,998.

[6] Cf. National Ass'n of Mfrs. v. NLRB, 717 F.3d 947, 952 (D.C. Cir. 2013) (assuming based on Noel Canning that "Becker's [March 2010 recess] appointment was constitutionally invalid").

[7] Characterizing the 2011 Delegation as "unprecedented," HealthBridge conceded that "every other delegation of section 10(j) authority to the general

Whether or not the 2011 Delegation was validly issued, it reconfirmed that the 2001 and 2002 Delegations were still in effect. See 2011 Delegation, 76 Fed. Reg. at 69,768-69.[8]

Because the earlier 2001 and 2002 Delegations were effective in August 2012 without regard to the 2011 Delegation, we consider whether the Board may delegate its power to authorize § 10(j) actions to the General Counsel, a question

counsel since enactment of the Taft-Harley Act of 1947[] took effect while the Board still had a quorum." Appellants' Br. 35 (emphasis in original). In doing so, HealthBridge specifically pointed to the 2001 and 2002 Delegations as examples of delegations that took effect while the Board had a quorum. Appellants' Br. 35 n.7. It repeated the concession at oral argument. Oral Arg. Tr. at 30:18-24. To the extent that HealthBridge's general argument with respect to "intrasession" recess appointments, see Noel Canning, 705 F.3d 500-07, is aimed at the earlier delegations, the 2002 Delegation was issued by a Board of 3 members, none of whom were appointed "intrasession." See NLRB, "Members of the NLRB since 1935," available at http://www.nlrb.gov/members-nlrb-1935 (last visited Sept. 9, 2013). Moreover, HealthBridge concedes that our decision in United States v. Allocco, 305 F.2d 704, 709-15 (2d Cir. 1962), forecloses its argument that the vacancy being filled by a recess appointment must arise during an "intersession" recess. Appellants' Br. 34 n.6.

[8] HealthBridge points out that in his letter authorizing the § 10(j) petition the General Counsel invoked only the 2011 Delegation, not the prior Delegations from 2001 and 2002. This does not undermine the validity of the 2001 or 2002 Delegations. If the General Counsel had the power to authorize the petition pursuant to the 2001 and 2002 Delegations, his failure to cite the correct page in the Federal Register would not divest him of that power.

of first impression in this Circuit.[9] The NLRA provides that the General Counsel "shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law." 29 U.S.C. § 153(d). The statute specifies the General Counsel's § 10 enforcement function and provides that the General Counsel shall have "such other duties as the Board may prescribe or as may be provided by law." Id. The plain, broad language of § 153(d) permits a properly constituted Board to delegate its § 10(j) power and enable the General Counsel to prosecute NLRA violations before a federal district court.

B. Delegation and the Loss of a Quorum

We next consider whether the subsequent loss of a quorum in the Board negates a proper delegation of § 10(j) authority to the General Counsel. The delegation at issue on appeal clearly was designed to allow for the continued

---

[9] Before the District Court, HealthBridge acknowledged "the power of a properly constituted board to delegate its Section 10(j) authority to the general counsel." At oral argument, HealthBridge again noted that the Board has the "power to delegate to the General Counsel in certain circumstances."

exercise of § 10(j) authority if and when the Board lost a quorum. See, e.g., 2001 Delegation, 66 Fed. Reg. at 65,998 ("The Board . . . has a continuing responsibility to fulfill its statutory obligations in the most effective and efficient manner possible."). Nevertheless, relying on Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB, 564 F.3d 469, 473 (D.C. Cir. 2009), HealthBridge argues that the delegee's authority, even if initially valid, ceased when the Board lost a quorum.[10]

In Laurel Baye, the Board had delegated all of its powers to a three-member committee of Board members with a quorum of two. Once the terms of all but two members of the Board had expired, the two committee members continued acting on behalf of the Board, even after the Board itself had lost a quorum. Id. at 470-72. The Supreme Court struck down the practice, but in

---

[10] HealthBridge also argues that the "springing" nature of the contingent delegation means that § 10(j) petitions will always be authorizable. But the NLRA does not prevent the Board, when it has a quorum, as it had in 2001 and 2002, from ensuring the uninterrupted day-to-day enforcement of the statute by delegating certain authority to effectuate the purposes of the statute. See, e.g., Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd., 247 F.3d 360, 368 (2d Cir. 2001) ("One of the underlying purposes of § 10(j) is to preserve the status quo in order to protect employees' statutory collective bargaining rights."). It would distort the language and structure of the statute to divest validly conferred powers from an independently appointed officer with explicit "final authority" over § 10 prosecutions merely because the Board, after lawfully delegating away those powers, lost a quorum.

dicta declined to adopt Laurel Baye's agency theory in the context of the Board's quorum requirement. See New Process Steel, L.P. v. NLRB, 130 S. Ct. 2635, 2642 n.4 (2010). The Court clarified that its "conclusion that the delegee group ceases to exist once there are no longer three Board members to constitute the group does not cast doubt on the prior delegations of authority to nongroup members, such as . . . the general counsel." Id. Even before New Process Steel, we had more affirmatively rejected the agency theory. Snell Island SNF LLC v. NLRB, 568 F.3d 410, 420 (2d Cir. 2009). Consistent with New Process Steel and our own precedent, we now join those of our sister Circuits that have concluded that the delegation of § 10(j) authority to the General Counsel at issue survives even when the Board subsequently lacks a quorum. See Frankl v. HTH Corp., 650 F.3d 1334, 1354 (9th Cir. 2011); Osthus v. Whitesell Corp., 639 F.3d 841, 844 (8th Cir. 2011); Overstreet v. El Paso Disposal, LP, 625 F.3d 844, 853-54 (5th Cir. 2010).

For these reasons, we hold that the General Counsel properly authorized and filed the § 10(j) petition in this case pursuant to the Board's 2001 and 2002 Delegations. Accordingly, we need not address the validity of the January 4, 2012 recess appointments.

C.  The Propriety of the Injunction

With respect to the merits of the underlying injunction, HealthBridge argues that the District Court erroneously applied this Court's two-prong test for § 10(j) injunctions, see, e.g., Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd., 247 F.3d 360, 364-65 (2d Cir. 2001), rather than the preliminary injunction standard that the Supreme Court established in Winter.

Our two-prong standard for § 10(j) injunctive relief is well established: "First, the court must find reasonable cause to believe that unfair labor practices have been committed.  Second, the court must find that the requested relief is just and proper."  Hoffman, 247 F.3d at 364-65.  In considering whether to grant a § 10(j) injunction, "[t]he district court does not need to make a final determination whether the conduct in question constitutes an unfair labor practice; reasonable cause to support such a conclusion is sufficient."  Id. at 365.  We have recognized that the "just and proper" prong of the § 10(j) injunctive relief standard for labor disputes incorporates elements of the four-part standard for preliminary injunctions that applies in other contexts.  See Hoffman, 247 F.3d at 368 ("[I]njunctive relief under § 10(j) is just and proper when it is necessary to prevent irreparable harm or to preserve the status quo.  While this standard

preserves traditional equitable principles governing injunctive relief, we are mindful to apply them in the context of federal labor laws.").

There are good reasons to employ a slightly different standard for labor disputes. Generally, a preliminary injunction involves no preliminary determination by a government enforcement agency, is resolved on the merits by a district court, and is issued pursuant to the court's equitable power rather than a specific statute. By contrast, § 10(j) petitions come from a unique statutory scheme that requires (1) deference to the NLRB, which resolves the underlying unfair labor practice complaint on the merits and makes an initial determination, prior to the filing of a petition, to file such a complaint, see Kaynard v. Mego Corp., 633 F.2d 1026, 1031 (2d Cir. 1980) (Friendly, J.), as well as (2) speedy resolution to preserve the status quo in a labor dispute, see Muniz v. Hoffman, 422 U.S. 454, 466-67 (1975) ("Time is usually of the essence in" § 10(j) injunction cases (quoting S. Rep. No. 105, 80th Cong., 1st Sess., at 8 (1947))). In any event, we remain mindful that issuing an injunction under § 10(j) "is an extraordinary remedy indeed." Kaynard, 633 F.2d at 1033 (quotation marks omitted).

Although HealthBridge urges otherwise, Winter did not alter the law in this Circuit with respect to the standard that applies for § 10(j) injunctions.

-23-

Instead, faced with the legal issue of whether courts properly could apply a "sliding scale" test, pursuant to which "a strong likelihood of prevailing on the merits" could offset a mere "'possibility' of irreparable harm," the Supreme Court in Winter merely restated the basic, four-part test for a preliminary injunction under traditional equitable principles. 555 U.S. at 20-22. To be sure, well before Winter there existed a circuit split with respect to the proper standard for granting a § 10(j) petition. See Hoffman, 247 F.3d at 368 & n.5 ("[C]ourts have taken different views on when it is just and proper to grant injunctive relief under § 10(j)."). But those of our sister Circuits that, like us, employ a standard specific to the specialized injunctive relief that may be sought under § 10(j) have not interpreted Winter as mandating the use of the regular preliminary injunction standard in labor dispute cases. See Chester ex rel. NLRB v. Grane Healthcare Co., 666 F.3d 87, 96 (3d Cir. 2011) ("Nothing in [Winter] suggests that the Court contemplated the relatively unusual scenario of interim injunctive relief in the context of a pending unfair labor practice proceeding."); see also NLRB v. Hartman & Tyner, Inc., 714 F.3d 1244, 1250 (11th Cir. 2013) (applying that Circuit's traditional two-prong test for § 10(j) actions without reference to Winter); Ampersand Publ'g., LLC v. NLRB, 702 F.3d 51, 55 (D.C. Cir. 2012)

(applying that Circuit's own test for § 10(j) actions without reference to Winter);

Overstreet v. El Paso Disposal, L.P., 625 F.3d 844, 850 (5th Cir. 2010) (same);

Glasser ex rel. NLRB v. ADT Sec. Servs., Inc., 379 F. App'x 483, 485 (6th Cir. 2010)

(same). Accordingly, we see no reason to abandon the two-part § 10(j) standard.

We also reject HealthBridge's argument that the District Court abused its

discretion in granting the § 10(j) injunction. See Hoffman, 247 F.3d at 364. In

reviewing the decision to grant the injunction, "we are bound by the district

court's findings of fact unless they are clearly erroneous and . . . we review fully

all conclusions of law, including findings of reasonable cause." Id.

Here, the District Court determined that HealthBridge had unilaterally

imposed its LBFs before bargaining to a lawful impasse and that this constituted

an unfair labor practice. See Silverman, 67 F.3d at 1059. "A genuine impasse in

negotiations exists when there is no realistic prospect that continuation of

discussion would be fruitful." NLRB v. WPIX, Inc., 906 F.2d 898, 901 (2d Cir.

1990) (quotation marks omitted). We discern no clear error in the District Court's

factual finding that the parties had not bargained to a lawful impasse. The record

evidence amply supported the finding. The parties' bargaining history, and in

particular the Union's notes from the May 2012 bargaining sessions, which the

District Court was entitled to credit, tended to "show that the Union was signaling a willingness to make concessions to retain the pension plan, to compromise on the pension plan, or to give up the pension plan altogether if [HealthBridge] offered enough economic concessions in exchange," but that the Centers refused to discuss any economic concessions without "movement" on the pension issue. See Joint App'x 498 (May 15, 2012 Centers' notes); Joint App'x 870 (May 15, 2012 Union notes).

Nor did the District Court err in determining "that the requested relief is just and proper." Hoffman, 247 F.3d at 364-65.[11] "In this Circuit, injunctive relief under § 10(j) is just and proper when it is necessary to prevent irreparable harm or to preserve the status quo." Id. at 368. "[T]he appropriate test for whether harm is irreparable in the context of § 10(j) . . . cases is whether the employees'

_____

[11] HealthBridge also argues that § 10(j) relief is not just and proper because the Board cannot establish a likelihood of success on the merits while its orders are unenforceable in the D.C. Circuit as a result of Noel Canning. We are not persuaded. First, the Supreme Court has granted the petition for a writ of certiorari in Noel Canning. See 133 S. Ct. 2861 (June 24, 2013) (mem.). Second, the Senate has recently confirmed a slate of nominees to the Board, see Josh Hicks, "NLRB Finally Working With Full Slate of Board Members," The Washington Post (Aug. 12, 2013), so that any future adjudication of the underlying action is likely to proceed without reference to the recess appointments issue.

collective bargaining rights may be undermined by the . . . [asserted] unfair labor practices and whether any further delay may impair or undermine such bargaining in the future." Id. at 369. "[T]he appropriate status quo in need of preservation is that which was in existence before the unfair labor practice occurred." Id. In considering whether a § 10(j) injunction is just and proper, we apply equitable principles "in the context of federal labor laws." Id. at 368.

The District Court found that the LBFs substantially altered the employees' conditions of employment under the prior CBA without the benefit of collective bargaining. Without a restoration of the status quo, any future bargaining would occur in the shadow of work conditions unilaterally determined and imposed by HealthBridge. Based on that finding, the District Court acted well within its authority when it determined that it was just and proper to grant injunctive relief as a way of preventing "persons violating the act [from] accomplish[ing] their unlawful objective before being placed under any legal restraint and thereby . . . mak[ing] it impossible or not feasible to restore or preserve the status quo pending litigation." Id. at 367 n.4 (quoting S. Rep. No. 105, 80th Cong., 1st Sess., at pp. 8, 27 (1947)).

Finally, HealthBridge argues that the District Court failed to consider (1) the alleged acts of sabotage during the commencement of the strike, and (2) the risk of financial ruin from the terms of the prior CBA. It was not an abuse of discretion for the District Court to discount the first argument as "unsubstantiated." As for the second argument, the Centers already have filed for bankruptcy protection in the Bankruptcy Court for the District of New Jersey, and that court has since authorized and extended modifications to the CBA pursuant to 11 U.S.C. § 1113(e). See In re 710 Long Ridge Rd. Operating Co., II, LLC, No. 13-bk-13653, 2013 WL 3732769 (Bankr. D. N.J. July 15, 2013); In re 710 Long Ridge Rd. Operating Co., II, LLC, No. 13-bk-13653, 2013 WL 796721 (Bankr. D. N.J. Mar. 4, 2013). HealthBridge failed to present sufficient evidence indicating how it would be further adversely affected financially by this temporary order enforcing the prior CBA, under which the parties operated for half a decade and which may be modified as necessary by the Bankrupcty Court.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the District Court.