*N.L.R.B. v. Key Food Stores, et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of October, two thousand twenty one.

PRESENT:   JOSÉ A. CABRANES,
                     ROSEMARY S. POOLER,
                     JOSEPH F. BIANCO,
                               *Circuit Judges.*

---

NATIONAL LABOR RELATIONS BOARD,

                     *Petitioner-Cross-Respondent,*

                     v.

KEY FOOD STORES CO-OPERATIVE, INC.,
1525 ALBANY AVE. MEAT LLC, HB FOOD CORP.,
PARAMOUNT SUPERMARKETS INC., RIVERDALE
GROCERS LLC, SEVEN SEAS UNION SQUARE, LLC,
100 GREAVES LANE MEAT LLC AND JAR 259 FOOD
CORP.,

                     *Respondents-Cross-Petitioners.*

20-731-ag (L)
20-1009-ag (XAP)
20-1028-ag (XAP)

---

**FOR PETITIONER-CROSS-RESPONDENT:**   JOEL HELLER (Elizabeth Heany, *on the brief) for* Peter B. Robb, *General Counsel*, National Labor Relations Board, Washington, DC.

**FOR RESPONDENTS-CROSS-PETITIONERS:** ROBERT S. FISCHLER, Ropes & Gray LLP, New York, NY, attorneys for Key Food Stores Co-Operative, Inc.

SCOTT M. WICH (Douglas P. Catalano, *on the brief*), Clifton Budd & Demaria, LLP, New York, NY, attorneys for 1525 Albany Ave Meat LLC, HB Food Corp., Paramount Supermarkets Inc., Riverdale Grocers LLC, Seven Seas Union Square, LLC, 100 Greaves Lane Meat LLC, Jar 259 Food Corp.

Application to enforce and cross-petition for review of a decision and order of the National Labor Relations Board (Chairman John F. Ring, Members Lauren McFerran and William J. Emmanuel) affirming, as modified, an order of an administrative law judge (Benjamin W. Green, Brooklyn, NY).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the application of the Petitioner is **GRANTED** and the cross-petition of the Respondents is **DENIED**.

Petitioner National Labor Relations Board ("N.L.R.B." or the "Board") submits this application to enforce a decision and order of the Board granting equitable and injunctive relief to the United Food and Commercial Workers Local 342 (the "Union") against Key Food Stores Co-Operative ("Key Food") and seven "member stores" in the co-operative: HB84 Food Corp. ("HB"), Seven Seas Union Square LLC ("Seven Seas"), 100 Greaves Lane Meat LLC ("Greaves Lane"), 1525 Albany Avenue Meat LLC ("Albany Avenue"), Jar 259 Food Corp. ("Jar"), Riverdale Grocers LLC ("Riverdale"), and Paramount Supermarkets Inc. ("Paramount"). In 2015, Key Food purchased several grocery stores from the bankrupt supermarket chain The Great Atlantic & Pacific Tea Company ("A&P"), and then auctioned those stores to its members. Throughout the course of purchase negotiations, Key Food, member stores, and the Union bargained over modifications to the existing collective bargaining agreements that the Union had with A&P. While the purchases closed and control of the former A&P stores was transferred to Key Food members, no complete labor agreement with the Union was ever reached. In September 2016, the N.L.R.B. filed a complaint against Key Food and its member stores under Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 151, *et seq.*, for various instances of discrimination based on union activity, and under Section 8(a)(5) of the Act for unlawful refusal to bargain.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

## DISCUSSION

When we review an application to enforce an order of the Board, the Board's findings of fact "shall be conclusive" if "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). *See also N.L.R.B. v. Caval Tool Div., Chromally Gas Turbine Corp.*, 262 F.3d 184, 188 (2d Cir. 2001) (Board's factual findings "will not be disturbed if they are supported by substantial evidence in light of the record as a whole"). The Board's credibility determinations "cannot be overturned unless they are hopelessly incredible or they flatly contradict either the law of nature or undisputed documentary testimony." *N.L.R.B. v. J. Coty Messenger Serv., Inc.*, 763 F.2d 92, 96 (2d Cir. 1985) (internal quotation marks omitted).

The Board's legal conclusions are upheld if they "have a reasonable basis in law." *Cibao Meat Prods. v. N.L.R.B.*, 547 F.3d 336, 339 (2d Cir. 2008).

(1)

We begin with Sections 8(a)(1) and 8(a)(3) and easily grant the Board's petition to enforce its order as to the claims arising under these sections.

Section 8(a)(1) makes it illegal for an employer to "interfere with, restrain, or coerce employees in the exercise of [their] rights guaranteed" under the Act. 29 U.S.C. § 158(a)(1). Similarly, Section 8(a)(3) makes it illegal for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). "Although §§ 8(a)(1) and (a)(3) are not coterminous, a violation of § 8(a)(3) constitutes a derivative violation of § 8(a)(1)." *Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 698 n.4 (1983).

The Board found that four member stores (HB, Seven Seas, Greaves Lane, and Albany Avenue) committed various discrimination violations. Respondents now dispute those findings on what boils down to factual grounds. Because "substantial evidence on the record considered as a whole" supports the Board's conclusions, 29 U.S.C. § 160(e), we grant the Board's petition to enforce its order as to the discrimination claims.

(2)

Next, we turn to the unlawful refusal to bargain claims under Section 8(a)(5). Under that section, it is illegal for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. §158(a)(5).

"[A] successor employer is ordinarily free to set initial terms on which it will hire the employees of a predecessor." *N.L.R.B. v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 295 (1972). However, when "the successor plan[s] to retain enough of the predecessor's employees so that the union's majority status will continue," *Creative Vision Res., LLC v. N.L.R.B.*, 882 F.3d 510, 523 (5th Cir. 2018), they become a "perfectly clear successor" with a duty to bargain, and they violate the Act

3

by "unilaterally establishing initial terms and conditions," *Nexeo Solutions LLC*, 364 N.L.R.B. No. 44, 2016 WL 3903008, at * 10 (July 18, 2016). The Board found that Respondents were "perfectly clear successors" to A&P, triggering their duty to bargain and their liability for not doing so under Section 8(a)(5). Respondents dispute that they were "perfectly clear successors."

An employer can assume perfectly clear successor status based on the terms of a purchase agreement. *See Nexeo,* 2016 WL 3903008, at * 9. Respondents did exactly this when they communicated their July 2015 Asset Purchase Agreement ("initial APA") to the Union. The initial APA stated that "[w]ith respect to [A&P Union employees,]. . . Buyer shall make an offer of employment, which shall be . . . consistent with the terms and conditions required by the governing Affected Labor Agreements or Modified Labor Agreements." Special App. 32.

A subsequent version of the APA ("amended APA"), approved by the Bankruptcy Court in the A&P proceedings, contained a clause providing that if no labor agreement was reached, the "offer of employment to [the Union employees] will be on terms as are reflected in Buyer's last best offer." Special App. 33. Respondents argue that this "last best offer" clause communicated an intent to establish employment terms unilaterally and therefore relieved them of perfectly clear successor status. We disagree. We have no trouble concluding that there was a reasonable basis in law for the ALJ's and the Board's conclusion that the "last best offer" clause of the amended APA entitled respondents "to implement their last best offer upon reaching a good-faith impasse in negotiations for a modified agreement, not before." Special App. 9. A "last best offer" is a well-established labor-law term. *See Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 142 (2d Cir. 2013) (employer "unilaterally impos[ing] its LBFs [last, best, and final offers] before bargaining to a lawful impasse . . . constituted an unfair labor practice"). Respondents' argument—that the "last best offer" clause essentially licensed them to designate any offer to be their "last best" one and thereby act on it unilaterally—is unpersuasive, and we reject it. Moreover, even if the "last best offer" clause *had* convincingly communicated some intent to act unilaterally—which it did not—it would have been too late: Respondents had already assumed perfectly clear successorship under the initial APA, and "an employer that has become a perfectly clear successor cannot vitiate that status by subsequently announcing its intent to unilaterally impose initial terms." *First Student, Inc. v. N.L.R.B.*, 935 F.3d 604, 613 (D.C. Cir. 2019) (internal quotation marks omitted).

In sum, Respondents had an obligation to bargain with the Union as "perfectly clear successors." The factual findings of the ALJ and the Board that Respondents failed to do so—for example, by ceasing efforts to bargain in February 2016—therefore lead us to grant the Board's petition with regard to claims under Section 8(a)(5).

(3)

Finally, Respondent Key Food argues, on its own, that the Board erred in finding that it was a joint employer under the so-called "joint employer doctrine." We agree with the board that Key Food was a joint employer.

4

"[A]n essential element" for joint employer status is "sufficient evidence of immediate control over the employees." *AT&T v. N.L.R.B.*, 67 F.3d 446, 451 (2d Cir. 1995) (quoting *Clinton's Ditch Coop. Co. v. N.L.R.B.*, 778 F.2d 132, 138-39 (2d Cir.1985)). "In determining immediate control, we weigh whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Id.*

Key Food argues that the Board only proved one of the factors (participation in the collective bargaining process), and that under *AT&T*, "[t]his is not enough." *AT&T* 67 F.3d at 451. *See also Pulitzer Pub. Co. v. N.L.R.B.*, 618 F.2d 1275, 1280 (8th Cir. 1980) ("[E]ven a very substantial qualitative degree of centralized control of labor relations does not in itself determine the joint employer issue."). But the Board's finding that "Key Food exercised direct and immediate control over essential terms and conditions of employment of the individual-store Respondents' employees" was supported by multiple significant pieces of factual evidence *outside* the collective bargaining context. Special App. 2. For example, Key Food CFO Sharon Konzelman sent an email to the member stores in which she prescribed specific hiring practices and told member stores to contact her or Key Food attorney Douglas Catalano about "what you can or should do with respect to union associates" on matters such as "hiring, employing, training, scheduling, termination, paying, benefits"; Catalano personally "addressed . . . complaints regarding [a terminated employee] and . . . attempted to resolve those matters with the Union"; and Greaves Lane and Albany Avenue co-owner Randy Abed stated that "he couldn't do anything without the Key Food Cooperative" when pressed by the Union to work out an agreement to end handbilling outside his stores. Joint App. 870-871, Special App. 97, 2. All these events indicate Key Food was active not just at the bargaining table, but had actual "involvement in the personnel decisions" at member stores. Special App. 97.

In sum, Key Food and its member stores were joint employers, and we therefore grant the Board's application to enforce its order as to those violations of the Act for which it found Respondents were liable as a joint employers.

**CONCLUSION**

We have reviewed all of the arguments raised by Respondents on appeal and find them to be without merit. For the foregoing reasons, we **GRANT** Petitioner's application to enforce the October 16, 2019 order of the Board and **DENY** Respondent's cross-petition to review that order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk