23-1194-cv
*Leslie v. Starbucks Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of May, two thousand twenty-four.

Present:
>    DEBRA ANN LIVINGSTON,
>        *Chief Judge*,
>    JOHN M. WALKER, JR.,
>    SUSAN L. CARNEY,
>        *Circuit Judges.*

---

LINDA M. LESLIE, REGIONAL DIRECTOR OF THE THIRD REGION OF THE NATIONAL LABOR RELATIONS BOARD FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD,

>    *Petitioner-Counter-Defendant-Appellant*,

>    v.                                        23-1194-cv

STARBUCKS CORP.,

>    *Respondent-Counter-Claimant-Appellee.*

---

For Petitioner-Counter-Defendant-Appellant:     DAVID P. BOEHM, Trial Attorney (Madeline Y. Corkett, Trial Attorney, Paul A. Thomas, Supervisory Trial Attorney, Kevin P. Flanagan, Laura T. Vazquez, Deputy Assistant General Counsels, Robert N. Oddis, Assistant General Counsel, Dawn L. Goldstein,

Richard J. Lussier, Deputy Associate General Counsels, Nancy E. Kessler Platt, Richard A. Bock, Associate General Counsels, Peter Sung Ohr, Deputy General Counsel, Jennifer A. Abruzzo, General Counsel, *on the brief*), National Labor Relations Board, Washington, DC.

For Respondent-Counter-Claimant-Appellee: SARAH M. HARRIS (Lisa S. Blatt, Mark S. Storslee, Tyler J. Becker, Edward L. Pickup *on the brief*), Williams & Connolly LLP, Washington, DC.

Jeffrey S. Hiller, David A. Kadela (*on the brief*), Littler Mendelson, PC, Columbus, OH.

Adam-Paul Tuzzo (*on the brief*), Littler Mendelson PC, Milwaukee, WI.

Appeal from a judgment of the United States District Court for the Western District of New York (Sinatra, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and **REMANDED**.

Petitioner-Counter-Defendant-Appellant Linda M. Leslie ("the Director"), Regional Director of the Third Region of the National Labor Relations Board ("NLRB"), appeals from the August 24, 2023 judgment of the United States District Court for the Western District of New York (Sinatra, *J.*) dismissing the Director's petition for temporary injunctive relief pursuant to 29 U.S.C. § 160(j), Section 10(j) of the National Labor Relations Act ("NLRA"), against Respondent-Counter-Claimant-Appellee Starbucks Corporation ("Starbucks"). On appeal, the Director argues principally that the district court erred in: (1) permitting expedited discovery; (2) denying motions to quash or modify certain subpoenas served on Workers United ("the Union") and Starbucks' current and former employees; and (3) dismissing the petition. We assume the parties' familiarity

with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to vacate and remand.

## I.        Background

### A.  Expedited Discovery

The Director's Section 10(j) petition, filed on June 21, 2022, seeks temporary relief in connection with a consolidated administrative complaint against Starbucks that the NLRB issued approximately one month earlier.   The underlying complaint resulted from an investigation into 35 charges filed by the Union, which was elected as representative of employees at several Starbucks cafes in or around Buffalo and Rochester (collectively, the "Buffalo area") between December 2021 and July 2022.   The since-amended complaint alleges that Starbucks engaged in numerous NLRA violations from August 2021, when the Buffalo-area organizing campaign became public, through July 2022.[1]   "[P]ending final disposition of the matters . . . before the Board," the petition requests temporary injunctive relief to require that Starbucks rehire seven discharged Union supporters in the Buffalo area; reopen a closed Buffalo-area mall kiosk where workers supported unionizing; bargain with the Union at a Buffalo-area store where alleged unfair labor practices scuttled an election effort; and bargain with the Union at a different Buffalo-area store over any new policies.   A55–59.   The Director also seeks a nationwide cease and desist order.   *Id.*

More than 2,000 pages of affidavits and documentary evidence were submitted with the petition, which the Director claimed sufficient to provide "reasonable cause" to believe that

---

[1] Specifically, the Director alleges that Starbucks "manipulate[d] employees to vote against the Union" by "threaten[ing] and interrogat[ing] them"; "closed stores with active organizing drives, withdrew benefits, and strictly enforced rules it had previously ignored"; "swarmed Buffalo-area stores" with "[d]ozens of out-of-state managers" who "surveil[led] employee conduct and discourage[d] union activity"; "tried inducing employees to vote in its favor by promising benefits and raising wages"; and "discharged seven organizers at five stores," among other labor violations.   SSA4.

Starbucks had "committed the unfair labor practices alleged." SSA5. The Director contended that "interim relief is 'just and proper' because [Starbucks] will otherwise accomplish its unlawful objective of chilling union support, both in Buffalo and nationwide." *Id.* Starbucks opposed the Director's bid to have the petition decided on the attached affidavits. Instead, the company urged the district court either to grant expedited discovery, in the form of depositions and/or an evidentiary hearing, or to stay the case until the administrative record was developed in proceedings before an administrative law judge ("ALJ") slated to begin within three weeks. SSA144, 147, 153. In late June 2022, the district court granted Starbucks' request for "limited, expedited discovery" but shortly thereafter stayed its commencement given the imminence of ALJ proceedings. SA3.

In late August 2022, after the NLRB had finished presenting its three-week-long case-in-chief before the ALJ, Starbucks notified the court that even following the completion of its own three-week-long case-in-chief, the company would still need discovery in the Section 10(j) proceedings, primarily as to whether injunctive relief would be just and proper. Starbucks alerted the district court to the fact that the Board had put on evidence as to whether relief would be just and proper during the ALJ proceedings, over the company's objection. Starbucks also complained that the ALJ had allowed the Board to subpoena Starbucks for documents but had refused Starbucks' efforts to subpoena witnesses, discharged employees, the Union, and the NLRB for documents. On September 7, 2022, the district court lifted the discovery stay and directed Starbucks to serve any document subpoenas.

### B. The Subpoenas

In September 2022, Starbucks issued 22 subpoenas for document discovery on various nonparties to the litigation: the Union custodian of records; two Union agents; and 19 Starbucks'

4

employees or former employees who had testified during the agency's case-in-chief before the ALJ. A375. The subpoenas sought documents in 21 discrete categories from the Union and 27 discrete categories from the current and former employees, spanning "the period from August 2021 to the present," SSA355, SSA366, and thus including not only the union-organizing period at issue in the underlying ALJ proceedings but also the period after the Board had filed its complaint. *See* SSA349–59 (subpoena to employee), SSA360–70 (subpoena to Union custodian).

The subpoenas were nationwide in scope, seeking, for example: "[a]ll emails from the email account sbworkersunited@gmail.com sent since August 2021" by "*any* Starbucks employee that reflects interest in starting a union campaign at *any* Starbucks store," SSA359 ¶ 16, SSA370 ¶ 14 (emphasis added); "any statements" made by employees "*outside* of Buffalo" who communicated with the Union or any Buffalo-area employees "relating to the subject of unionization, whether in Buffalo or Rochester, at their store, *or elsewhere*," SSA368 ¶ 1(f) (emphasis added), *see also* SSA357 ¶ 1(f); and documents "relating to changes to the timing of filing election petitions at *any* Starbucks store," SSA359 ¶ 15, SSA370 ¶ 13 (emphasis added).

The subpoenas specifically requested the names of employees engaged in union activity, including those employees "considered at any time to have changed from being in favor [of] union representation to not being in favor of it" in Buffalo-area stores where election petitions were filed, SSA356 ¶ 1(b), SSA367 ¶ 1(b), Buffalo-area stores where election petitions were not filed, SSA357 ¶ 1(d), SSA368 ¶ 1(d), and locations outside of the Buffalo area, SSA357 ¶ 1(f), SSA368 ¶ 1(f). They also requested documents likely to feature the individual names of Starbucks employees, including those "relating in any way to Communications you have had with the Union" regarding media appearances, SSA357–58 ¶¶ 3–5, *see also* SSA368–69 ¶¶ 3–5; "discussing an increase and/or decline in support for the organizing campaigns" in the Buffalo-area stores,

5

SSA359 ¶ 13, SSA370 ¶ 11; and "relating to and/or discussing reasons other than alleged retaliation that employees have cited as a reason for not supporting the Union," SSA359 ¶ 17, *see also* SSA370 ¶ 15. The subpoenas to current and former employees specifically sought documents regarding their non-Starbucks employment and education, including tax forms, daily and weekly schedules, extracurricular activities, and job applications, *see* SSA359 ¶¶ 18–21.

The NLRB and the Union moved to quash the subpoenas or for protective orders. The agency argued that the "excessive," "unnecessary" subpoenas were "largely and inappropriately directed at individual government witnesses" and that it was "unable to identify a single instance in which a court has permitted a Respondent to subpoena government witnesses directly for documents in a Section 10(j) proceeding." SSA209, 211 & n.3. The agency also highlighted that it had completed its case-in-chief before the ALJ—meaning Starbucks had "already been given a full and fair opportunity to cross-examine Petitioner's witnesses and examine Petitioner's documentary evidence." SSA209. The Union independently argued that the subpoenas were unduly burdensome and demanded "protected information" under the "employee-union representative privilege." Workers United Motion to Quash, *Leslie v. Starbucks Corp.*, No. 22-cv-478, ECF No. 42 at 4–5. Moreover, the Union argued that most of the requested documents pertained to "Starbucks workers engaging in legally-protected organizing activity," which NLRB precedents required shielding from disclosure.[2] *Id.* at 5.

---

[2] Although the subpoenas contained a clause permitting respondents to redact names so as "[t]o ensure that the requests . . . are not construed to have the purpose or effect of interfering with, restraining or coercing employees in the exercise of their rights under Section 7 of the [NLRA]," the clause contained an exception to redaction "where a Document reflects or could be construed to reflect matters that effected the employee's interest . . . in union organizing or union representation or where the Document otherwise relates to whether Section 10(j) relief would be just and proper, as referenced [in] testimony at the hearing on the Complaint." *See, e.g.*, SSA356.

The district court granted in part and denied in part the motions to quash the subpoenas or for protective orders. *Leslie v. Starbucks Corp.*, No. 22-cv-478, 2022 WL 7702642 (W.D.N.Y. Sept. 23, 2022), *reconsideration denied*, 2023 WL 1969520 (W.D.N.Y. Jan. 25, 2023). The court rejected blanket arguments rooted in privilege and instead instructed that privilege claims be raised via a particularized privilege log. *Id.* at *2. The court then summarily quashed subpoenas as to fifteen categories of information because they risked unnecessary delay, citing an intent to balance "Respondent's need for the requested documents with Petitioner's need to proceed expeditiously (and the burden of subpoena compliance generally)." *Id.* The district court otherwise declined to quash subpoenas as to nine categories of requested information, allowed for specific name redactions but not redaction of store identification information as to one category, and struck parts of two categories.[3] *Id.* at *3, A410.

### C. Subsequent Court and ALJ Proceedings

The Union and current and former employees refused to comply with the subpoenas; instead, on October 5, 2022, the Union filed charges with the NLRB, claiming that the subpoenas

---

[3] Specifically, the court allowed for name redactions but not redaction of store identification information as to a request for "any statements" by employees "outside of [northern New York stores]" regarding "whether they were in favor or not in favor of union representation and the reasons for their position." *See* SSA357 ¶1 (f), SSA368 ¶ 1(f). The district court also struck parts of two requests that sought communications between the Union and employees regarding media publicity about "union related matters at Starbucks stores around the country," while allowing the parts that went to "union related matters involving the [northern New York] stores." *See* SSA357–58 ¶¶ 4–5, SSA368–69 ¶¶ 4–5. Notably, the district court did not provide for redactions or a protective order as to ¶¶ 1(b) and 1(d), which, like ¶1 (f), sought the names of specific employees who had made statements regarding union support. *See* SSA356–57, SSA367–68. Nor did the district court quash or modify requests for other documents likely to contain the names of employees, including communications regarding media contacts, documents discussing the dynamics of union support in the Buffalo area, documents related to changes to the timing of filing election petitions at any store, and emails from employees to the Union email account. *See* SA13–15 (denying requests to quash and for protective orders as to SSA357–59 ¶¶ 3, 13, 15–17 and SSA368–70 ¶¶ 3, 11, 13–15).

were unfair labor practices. The Union alleged that, in requesting such expansive document discovery from itself and Starbucks employees, Starbucks had violated §§ 8(a)(1) and 8(a)(4) of the NLRA.[4] Starbucks then moved the district court to find the Union and the subpoenaed nonparties in contempt and to sanction them pursuant to Federal Rule of Civil Procedure 45(g). On December 15, 2022, the NLRB General Counsel authorized the Regional Director to file an administrative complaint against Starbucks over the Union's charges regarding the subpoenas. *See* Compl., *Starbucks Corp.*, N.L.R.B. Case No. 03-CA-304675; *see also* Workers United Status Report, *Leslie v. Starbucks Corp.*, 22-cv-478, ECF No. 71-1. The agency separately sought a writ of injunction from this Court directing Starbucks to withdraw the subpoenas. *See In re: N.L.R.B.*, 23-120, ECF No. 1 (2d Cir. 2023) (filed Jan. 27, 2023). Meanwhile the Union sought its own writ from this Court, requesting mandamus to vacate the district court discovery order. *In re: Workers United*, 22-3229, ECF No. 1 (2d Cir. 2022) (filed Dec. 28, 2022).

On March 1, 2023, an ALJ ruled on the complaint underlying the Section 10(j) petition, deciding that Starbucks had committed labor violations during its response to Buffalo-area organizing.[5] *See Starbucks Corp.*, N.L.R.B. No. 03-CA-285671, et al., JD-17-23 (2023) (not reported in Board volumes). As a remedy, the ALJ ordered the Buffalo-area relief the agency had sought

---

[4] Under NLRB precedent, subpoenas can amount to unfair labor practices if irrelevant, if aimed at an illegal objective, or if the employees' confidentiality interests under Section 7 outweigh the employer's interest in obtaining the information. *See Guess?, Inc.*, 339 N.L.R.B. 432, 434 (2003).

[5] The ALJ found, among other things, that Starbucks: violated Section 8(a)(1) of the NLRA by surveilling, interrogating, restricting, threatening and "otherwise coercing employees from engaging in union or other protected activities"; violated Section 8(a)(3) by "enforcing rules selectively" and "retaliating" against union supporters; violated Section 8(a)(4) by retaliating against employees for giving testimony under the Act; and violated Section 8(a)(5) by "refusing to bargain collectively and in good faith with the Union as the collective-bargaining representative" of some stores. *Starbucks Corp.*, N.L.R.B. No. 03-CA-285671, et al., JD-17-23 (2023), at 2–3.

on a temporary basis from the district court—including, among other things, reinstatement of the fired workers, reopening the closed kiosk store, and the instatement of two bargaining orders—as well as a nationwide cease and desist order.[6]  *Id.* at 195–96.

On May 9, 2023, this Circuit denied the writ petitions filed by the NLRB and the Union, concluding that the petitioners had not demonstrated extraordinary relief was necessary.   None of the subpoenaed nonparties "lack[ed] an adequate, alternative means of obtaining relief" because they could yet "appeal either a civil or criminal contempt sanction if they refuse[d] to comply with the subpoenas."  *In re: Workers United*, No. 22-3229, ECF No. 77 (2d Cir. May 9, 2023).   We added that "in light of the recent decision by an [ALJ] finding that Starbucks violated § 8 of the National Labor Relations Act, it would be more appropriate for Petitioners to seek reconsideration of the district court's discovery order, which may be subject to material alteration as a result of the administrative factual findings and legal conclusions."  *Id.*

Three days later, on May 12, a different ALJ concluded that all but two of Starbucks' subpoena requests in the Section 10(j) proceeding violated Section 8(a)(1) pursuant to *Guess?, Inc.*, 339 N.L.R.B. 432, 434 (2003).[7]  *See Starbucks Corp.*, N.L.R.B. No. 03-CA-304675, JD-33-23

---

[6] Starbucks timely appealed that ruling, and the appeal is now pending before the Board. *See* https://www.nlrb.gov/case/03-CA-285671 (March 1, 2023 Order Transferring Proceeding to the Board).

[7] According to the ALJ, most of the subpoena demands that the district court had permitted were for relevant information.   However, even assuming they were not aimed at an illegal objective, the ALJ determined that the employees' protected confidentiality interests outweighed Starbucks' interest in obtaining the relevant documents, particularly those containing names of specific employees.   A382–84.   The ALJ separately found that some requests permitted by the district court had an illegal objective, citing agency regulations that prohibit the disclosure of documents in the General Counsel's possession without the consent of the General Counsel.   A389.   In addition, the ALJ found that requests for employment and educational information, which the district court had quashed, and requests for documents as to publicity regarding union activities, which the district court had not quashed, were irrelevant to the Section 10(j) inquiry of "whether the General Counsel has established reasonable cause to believe that unfair labor practices have occurred or [whether] injunctive relief is just and proper because the unlawful conduct caused

9

(2023) (not reported in Board volumes); A372–392.  The ALJ observed that "this is the first Board case" involving allegations that a respondent seeking to defend itself against a Section 10(j) petition made discovery requests that in and of themselves violated the NLRA.  A378.  Because the Union did not file the unfair labor practice charge over Starbucks' discovery requests until after the district court had acted on them, the ALJ further opined that "the [NLRB] General Counsel and the Union . . . are utilizing this unfair labor practice case to effectively challenge the district court's discovery rulings"—in other words, "not just as a shield to protect employee confidentiality interests, but as a sword to weaken the Respondent's 10(j) defense and obtain an injunction." A378.

Back before the district court, the NLRB in June 2023 urged it to reconsider the discovery orders in light of this Court's recognition that the ALJ decision on the original unfair labor practice charges could materially alter the appropriate scope of discovery.  The Union similarly requested reconsideration, highlighting the second ALJ's findings that all but two of the subpoena requests had violated the NLRA.  Starbucks pressed the court to grant its motions for contempt sanctions, given the nonparties' refusal to comply with the subpoenas.  That same month, Starbucks filed a counterclaim against the NLRB, alleging that the agency's decision to issue a *Guess?* complaint over the subpoenas violated the company's First Amendment right to petition the government and its Fifth Amendment right to due process.  Starbucks Countercl., *Leslie v. Starbucks Corp.*, No. 22-cv-478 (W.D.N.Y. June 16, 2023), ECF No. 107.

---

irreparable harm."  A387–88.  The only two requests that the ALJ concluded were not unfair labor practices were those seeking information as to the numbers (but not the names) of employees supporting union efforts in the Buffalo region, which the district court had not quashed.  A373.

10

At an August 2023 hearing, the district court refused to reconsider its discovery orders, finding no controlling decisions or data that it had overlooked. *Leslie v. Starbucks Corp.*, No. 22-cv-478, 2023 WL 5431800, at \*5 (W.D.N.Y. Aug. 23, 2023); SA35; A494–95. Although recognizing that this Circuit "thought that the ALJ's decision may obviate the need for discovery on the reasonable cause prong of the 10(j) standard," the district court determined that the authorized discovery "relates to the just and proper prong" and, thus, that the ALJ decision on the merits of the underlying complaint "doesn't impact the discovery order." A495. Moreover, because "[t]he NLRB . . . may not decide for itself what discovery is permissible," the district court held that it would dismiss the Section 10(j) petition unless the Director "certifie[d], by September 1, 2023, that she has terminated all efforts to impede or frustrate this Court's discovery order, including by termination of the *Guess?* proceeding." 2023 WL 5431800, at \*4. The district court framed the dismissal as a Rule 37 sanction. *Id.* (citing Fed. R. Civ. P. 37). When the NLRB declined to provide such a certification, its petition was dismissed.

## II.      Analysis

We review each of the issues on appeal—whether the district court properly allowed expedited discovery; denied motions to quash subpoenas served on the Union and Starbucks' current and former employees; and dismissed the Section 10(j) petition as a sanction against the Board— for abuse of discretion, as each issue concerns the district court's "broad discretion to manage discovery." *Kyros Law P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 545 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822 (2024).[8]

---

[8] As district courts have noted, "the Second Circuit has yet to articulate a standard for determining whether to allow expedited discovery." *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 209 (W.D.N.Y. 2020) (quoting *Schneiderman v. Griepp*, No. 17-cv-3706, 2017 WL 3129764, at \*1 (E.D.N.Y. July 20, 2017)). The Federal Rules likewise do not elaborate a standard. *See* Fed. R. Civ. P. 26(d). As

As to Section 10(j) itself, this NLRA provision authorizes the NLRB to petition district courts for "appropriate temporary relief or restraining order" when the agency has filed a complaint over alleged unfair labor practice charges but has not obtained a final judgment in the ensuing agency proceedings.   29 U.S.C. § 160(j).   The district court may then "grant to the Board such temporary relief or restraining order as it deems just and proper."   *Id.*   Our Court applies a "two-prong standard for § 10(j) injunctive relief [that] is well-established."   *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 141 (2d Cir. 2013), *cert. denied*, 574 U.S. 1066 (2014).   First, "[i]n considering whether to grant a § 10(j) injunction, '[t]he district court does not need to make a final determination whether the conduct in question constitutes an unfair labor practice; reasonable cause to support such a conclusion is sufficient.'"   *Id.* (quoting *Hoffman v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 365 (2d Cir. 2001)).   Second, "the court must find that the requested relief is just and proper," a determination which "we have recognized . . . incorporates elements of the four-part standard for preliminary injunctions that applies in other contexts."   *Id.* (quoting *Hoffman*, 247 F.3d at 365); *see generally*, *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008).

### A.  Expedited Discovery

At the start, the district court did not abuse its discretion by allowing "limited, expedited discovery."   *Leslie v. Starbucks Corp.*, No. 22-cv-478, 2022 WL 2708915, at *2 (W.D.N.Y. June 27, 2022).   To be sure, district courts in this Circuit have decided Section 10(j) petitions numerous

---

then-District Judge Lynch once explained, "it seems that the intention of the rule-maker was to confide the matter to the Court's discretion."   *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005).   *See also Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (Chin, *J.*).   We see no need to declare a specific standard and instead apply the general abuse of discretion standard that we already apply to discovery-related decisions.   *See Kyros Law P.C.*, 78 F.4th at 545.

times without undertaking discovery.[9]  But this in no way renders it an abuse of discretion to allow limited expedited discovery as the district court did here, and particularly (though by no means exclusively) when the administrative record is incomplete.[10]

The just and proper inquiry that was the primary focus of the district court preserves "equitable principles" by applying them "in the context of federal labor laws," *Kreisberg*, 732 F.3d at 143 (quoting *Hoffman*, 247 F.3d at 368), so as "to further the policies of the [NLRA]," *Hoffman,* 247 F.3d at 368 (quoting *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 40 (2d Cir. 1975)).  In this context, where we typically grant relief when "necessary to prevent irreparable harm or to preserve the status quo," the irreparable harm inquiry probes "whether the employees' collective bargaining rights may be undermined by the . . . [asserted] unfair labor practices and whether any further delay may impair or undermine such bargaining in the future."  *Kreisberg*, 732 F.3d at 142 (quoting *Hoffman*, 247 F.3d at 368–69).  "[T]he appropriate status quo in need of preservation is that which was in existence before the unfair labor practice occurred."  *Id.* at 142–43 (quoting *Hoffman*, 247 F.3d at 369).  These aspects of the just and proper inquiry may well involve evidence

---

[9] *See, e.g., Murphy v. NCRNC, LLC*, 474 F. Supp. 3d 542, 548 n.2 (N.D.N.Y. 2020) (granting Section 10(j) relief based on NLRB-supplied documentary evidence and a respondent's affidavits and exhibits); *Murphy v. Cascades Containerboard Packaging*, No. 18-cv-375, 2018 WL 3628254, at *1 n.1 (W.D.N.Y. July 31, 2018) (partially granting Section 10(j) relief based on affidavits and exhibits submitted by both parties); *Silverman v. Major League Baseball Player Rels. Comm., Inc.*, 880 F. Supp. 246, 250 (S.D.N.Y. 1995) (Sotomayor, *J.*) (granting Section 10(j) relief based on NLRB-supplied affidavits and exhibits), *aff'd*, 67 F.3d 1054 (2d Cir. 1995).

[10] District courts around the country have previously granted such discovery.  *See, e.g.*, *Overstreet v. Starbucks Corp.*, No. 2:22-cv-676, ECF No. 7 (D. Ariz. Apr. 25, 2022) (allowing an evidentiary hearing to cross-examine affiants); *Kobell v. Reid Plastics, Inc.*, 136 F.R.D. 575, 579–80 (W.D. Pa. 1991) (requiring union field organizer to appear for deposition); *Fusco v. Richard W. Kaase Baking Co.*, 205 F. Supp. 459, 464 (N.D. Ohio 1962) (allowing subpoenas against the Board for "affidavits and statements of those employees who were to appear as witnesses").

13

that an administrative law judge does not even consider when evaluating unfair labor practice charges.[11]  It was thus reasonable to permit Starbucks to file "a proposed discovery order indicating . . . what discovery it need[ed] and why."  *Leslie*, 2022 WL 2708915, at *2.

## B.  The Subpoenas

Although it was not an abuse of discretion to provide for *limited* expedited discovery, we conclude that the subpoenas permitted here are plainly overbroad.  A discovery-related ruling must not rest on "an erroneous view of the law or on a clearly erroneous assessment of the evidence," nor exceed "the range of permissible decisions."  *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020).  Courts may grant subpoena requests where the information sought is 1) nonprivileged, 2) "relevant to any party's claim or defense," and 3) "proportional to the needs of the case."  Fed. R. Civ. P. 26(b).  In conducting this analysis, courts are to consider factors like "the importance of the issues at stake . . . the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," among others.  *Id.*  The Rule also states that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" via such actions as "limiting the scope of . . . discovery," "prescribing a [different] discovery method," and even "forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1).  Under the Rule governing subpoenas, moreover, a district court "*must*" quash or modify a subpoena that either "requires disclosure of privileged or other protected matter, if no

---

[11]  Somewhat unusually, the ALJ adjudicating the underlying complaint here heard evidence as to the just and proper inquiry.  *See, e.g.*, SSA290–91.  But when the district court below granted Starbucks' request for expedited discovery, that proceeding had yet to begin and therefore such evidence was yet to be entered into the administrative record.  Because the ALJ's hearing of just and proper evidence post-dated the initial expedited discovery decision on review, we do not comment on its impact.

14

exception or waiver applies," or "subjects a person to undue burden," among other conditions. Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). The district court "may" quash or modify the subpoena if it requires disclosing "confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B).

In this Section 10(j) case, the subpoena requests authorized by the district court clearly exceed the acceptable scope contemplated by the Federal Rules. For instance, requiring the Union, as well as former and current employees, to search for and produce to Starbucks "[a]ll emails from the email account sbworkersunited@gmail.com sent since August 2021" by "*any* Starbucks employee that reflects interest in starting a union campaign at *any* Starbucks store [or] support for the Union," SSA359 ¶ 16, SSA370 ¶ 14, is not proportional to the inquiry required in connection with this Section 10(j) petition and requires disclosure of confidential labor organizing activities. *See Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) (Kavanaugh, *J.*) (stating that it is "well settled" that the NLRA "gives employees the right to keep confidential their union activities" (quoting *Guess?*, 339 N.L.R.B. at 434)); *see also Dunbar v. Landis Plastics, Inc.*, 977 F. Supp. 169, 176 n.8 (N.D.N.Y. 1997) (finding that an "attempt to raise issues of credibility" was "improper exploration of the merits of the underlying [NLRB] proceedings"). This disproportionality is especially true given that, by the time the district court declined to limit the subpoenas' scope, an extensive administrative record was readily available.

The district court ruled that these broad requests should be upheld because the sought-after discovery might unveil whether "the union or someone else [] is responsible for chilling organizing activity," which it saw as a relevant defense to the NLRB's claim that Section 10(j) relief was just and proper. *See* SA27; *see also* SSA5. Similarly, Starbucks argues that the purpose of its discovery is to gather evidence that purported chilling effects are "either nonexistent or not traceable

to Starbucks." Starbucks' Br. at 34–35. But many of the alleged unfair labor practices here are inherently chilling. For example, we have recognized that retaliatory discharges of "active and open union supporters" risk "a serious adverse impact on employee interest in unionization." *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980). Likewise, "conduct which gives the impression of surveillance violates [the NLRA] if that conduct reasonably tends to interfere with, restrain, or coerce employees in the exercise of their Section 7 rights." *Days Inn. Mgmt. Co. v. N.L.R.B.*, 930 F.2d 211, 214–15 (2d Cir. 1991) (internal quotation marks omitted and alterations adopted). And threatening to withhold benefits if employees unionize violates the NLRA. *See, e.g.*, *N.L.R.B. v. Jamaica Towing, Inc.*, 632 F.2d 208, 213–14 (2d Cir. 1980) (deeming it an unfair labor practice to "threaten[] that unionization will result in decreased benefits"). Whether the Union contributed further chill by publicizing news of the alleged unfair labor practices is largely beside the point, as Starbucks has provided no basis on which to suspect the Union "spread[ ] rumors or sensationalized wholly unsubstantiated charges against" it.[12] *McKinney v. Starbucks Corp.,* 77 F.4th 391, 400 (6th Cir. 2023) (quoting *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir. 1992)), *cert. granted sub nom. Starbucks Corp. v. McKinney*, No. 23-367, 2024 WL 133821 (U.S. Jan. 12, 2024); *see also DIRECTV, Inc. v. N.L.R.B.*, 837 F.3d 25, 33 (D.C. Cir. 2016) (employees' statements airing employment-related grievances in news interview were "protected concerted activity").[13]

---

[12] Starbucks' sole asserted "mischaracterization[]" involves the Union's February 2022 social media statement that a Starbucks employee involved in union organizing had been fired. *See* Starbucks' Br. at 36 n.4. That statement does not appear to be "wholly unsubstantiated," however: although the employee testified that she was not formally terminated from the company, *see* SSA288, there is evidence indicating that she was constructively terminated, *see* A332–33.

[13] The district court supported its "chill causation" theory by citing a recent Sixth Circuit case, now on review on other grounds by the Supreme Court. *See McKinney,* 77 F.4th at 400. But this case in fact

16

Starbucks contends that the district court properly weighed the relevant factors in deciding to allow the subpoena requests, citing the fact that the district court quashed many categories of requests and that it required name redactions as to one of the categories. These arguments are unavailing. Quashing some subpoena requests does not cure the error of allowing others where "the burden or expense of the proposed discovery outweighs its likely benefit" or "subjects a person to undue burden." Fed. R. Civ. P. 26(b)(1), 26(c)(1), 45(d)(3)(A)(iv). As for redaction, the subpoenas' general name redaction clause paradoxically instructs respondents to produce names if they inform the "just and proper" inquiry, which is precisely what Starbucks claimed its requests were designed to do and the purpose for which the district court authorized them. *See* SSA424 (conceding that "every one of [Starbucks'] subpoena requests this Court's discovery orders approved relates to whether injunctive relief is just and proper"). In effect, then, the subpoenas do not permit redacting names in multiple categories of sought-after discovery where names would likely appear, including with regard to statements by Buffalo-area employees about union support, documents related to media contacts, documents discussing increasing or decreasing support for Buffalo-area organizing, documents relating to changes in the timing of filing election petitions at any Starbucks stores, union-employee emails, and documents discussing reasons that employees cited for not supporting the Union. *See* SA13–15; SSA356–59 ¶¶ 1(b), 1(d), 3, 13, 15–17; *see also* SSA367–70 ¶¶ 1(b), 1(d), 3, 11, 13–15. And although the district court limited the non-

supports our conclusion. The Sixth Circuit, in affirming the district court's grant of Section 10(j) relief, rejected Starbucks' claim that such relief was inappropriate because the Union had precipitated any chill: "Starbucks does not identify any rumors or unsubstantiated charges made by the Union" and instead "merely points out that the Union publicized the actual facts of" relevant terminations. *Id.* The Sixth Circuit went on to note that "Starbucks fails to identify any authority suggesting that a union that informs its members of anti-union activities should be precluded from obtaining temporary injunctive relief." *Id.* The same reasoning applies in this case.

Buffalo-area reach of two categories of requests, *see* SA14–15, SSA357–58 ¶¶ 4–5, SSA368–69 ¶¶ 4–5, it did not do so with regard to a request for "[a]ll [d]ocuments relating to changes to the timing of filing election petitions at any Starbucks Store based on . . . alleged unfair labor practices [or] any other factor," SSA 359 ¶ 15, SSA370 ¶ 13, nor with regard to emails by "any Starbucks employee that reflect[] interest in starting a union campaign at any Starbucks store," SSA 359 ¶ 16, SSA370 ¶ 14.

To be sure, the district court acted well within the scope of its discretion in refusing to recognize a blanket "privilege" such as to render *all* the sought-after documents undiscoverable, properly observing that our caselaw recognizes no such discovery privilege. But the fact that the sought-after information was not *per se* privileged does not mean it is not "protected matter." *See Veritas Health Servs., Inc.*, 671 F.3d at 1274; *see also* 29 U.S.C. § 151 ("[E]ncouraging . . . collective bargaining" and "protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing" is the "policy of the United States."). We note as well that neither Starbucks nor the agency ably presented its case on these discovery issues—as to Starbucks, the specific need for each category of discovery and the reasons why such discovery was proportional to these needs, and as to the agency, the burdens of producing specific categories, including precisely the reasons why particular requests were unduly burdensome. In sum, we conclude that the district court was not well-situated to conduct the relevant weighing analysis on the record before it. We therefore vacate rather than reverse the district court's judgments as to the permitted subpoenas, allowing it an opportunity for closer inspection on remand.

### C. Dismissing the Petition

Given our conclusion that the permitted subpoenas were overbroad, it follows that the district court's dismissal of the Section 10(j) petition as a sanction for noncompliance with these subpoenas was in error. Accordingly, we need not further address the dismissal of the Section 10(j) petition. For the benefit of the district court on remand, however, we note that Federal Rule of Civil Procedure 45, rather than Rule 37, constitutes the basis on which the court may consider contempt sanctions if the subpoenaed nonparties to this litigation persist in declining to comply with the district court's discovery orders on remand.

\* \* \*

We have considered the Director's and Starbucks' remaining arguments and find them to be without merit. Accordingly, we **VACATE** and **REMAND** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

19